MAXWELL v. KIRKPATRICK.—116 S. W. (2d), 340.

Middle Section. December 22, 1937.

Petition for Certiorari denied by Supreme Court, May 12, 1938.

24

C. C. Jackson, of Murfreesboro, for G. A. Maxwell.
Manier & Crouch, of Nashville, for R. G. Kirkpatrick.

FELTS, J. G. A. Maxwell sued R. G. Kirkpatrick before a justice of the peace to recover for damages claimed to have been caused to his automobile by Kirkpatrick's negligence. The justice dismissed the suit, upon appeal the circuit judge, trying it without a jury, gave Maxwell judgment for $200, and Kirkpatrick appealed in error to this court.

He insists that the judgment should be reversed and the suit dismissed because (1) there is no evidence of any negligence on his part, and (2) the undisputed evidence shows, as a matter of law, that Maxwell was guilty of contributory negligence which barred his right to recover.

 It should be noted that this case is incorrectly styled in this court; that the positions of the parties should be reversed, Kirkpatrick being the plaintiff in error and Maxwell the defendant in error; but, to avoid confusion in identifying the case, we have conformed to the style as it appears on the transcript and on our dockets. Curtis v. Kyte, Tenn. App., 106 S. W. (2d), 234, 236.

The cause of action alleged in the warrant was that Kirkpatrick failed "to stop before entering an arterial highway," and carelessly ran his automobile "so near to plaintiff's automobile" that, in order to avoid a collision, "plaintiff ran his car against a tree."

The accident occurred at the intersection of Chamberlain street and the Lebanon-Murfreesboro highway, which is in the suburbs but outside the corporate limits of Murfreesboro. At this intersection the highway runs north and south and the street east and west. The highway is about 40 feet wide and has a paved asphalt surface, and the street is about 30 feet wide and has a surface of crushed stone. The street enters the highway on its west side, does not cross the highway, but ends in the intersection. No "stop" sign had been erected at the entrance of the street into the highway either by the State Highway Department or by any local authority.

The testimony adduced for Maxwell was that he was driving south on the highway approaching Murfreesboro; that before he reached the intersection he saw an automobile (identified by his witness Burkhardt as driven by Kirkpatrick) coming east out of Chamberlain street into the highway; that he thought the automobile would

stop but it "didn't offer to stop;" that it came on out in front of him when he was "50 or 60 feet" from the intersection; that it "was not going very fast" but he "was going pretty fast"—about "35 miles" per hour; that the ground was frozen (it being December 30, 1935) and snow and ice on the road; that, in order to avoid a collision with this car, which had come out in front of him and turned south and was going on up the highway towards Murfreesboro, he put on his brakes, and his car began skidding and skidded up to the intersection, on across the intersection, and on beyond the intersection "150 feet or 153 feet" and struck a tree with such force as to crush the fender, running board, and the side of the body, and to bend the frame; that there was no contact between the cars and this other car did not stop but continued on up the highway towards Murfreesboro; and that he could have safely passed to the left of this other car "if it had not been for the snow on the left side of the road."

Kirkpatrick testified that he lived on Chamberlain street in the second house west of the intersection; that on the day in question he drove his car from his home east along Chamberlain street into the intersection and turned south on the highway towards Murfreesboro at about 10 o'clock a. m. and then again at about 2 p. m.; that he saw no car on the highway at either time when he entered the intersection, and heard no noise of the brakes or the crash of the Maxwell car against the tree, and knew nothing of the accident until he was later told about it. In this he was corroborated in part by his wife and her sister, both of whom went with him in the car that afternoon to Murfreesboro. Opposed to this was the testimony of the witness Burkhardt that the driver of the car that came out in front of Maxwell was Kirkpatrick; that Kirkpatrick had "a girl or two or his wife" with him in the car; and that the accident occurred about 12 o'clock noon, while Maxwell said it happened about 3 p. m.

So it would seem within the province of the learned trial judge, as trier of the facts, who had the advantage of seeing and hearing the witnesses, to resolve these conflicts and discrepancies favorably to Maxwell and to find that the accident happened as he and his witnesses say it did.

1. But Kirkpatrick contends that even so the facts fall short of evidencing actionable negligence on his part; that he was under no duty to stop before entering the highway because it was not an "arterial," "main traveled," or "through" highway, since it had not been designated as such by the erection of "stop" signs, as required by the statute; but that, on the contrary, he had the right of way himself because he was the first to enter the intersection and because his car was on the right and Maxwell's car on the left and Maxwell was required by the statute to yield the right

of way to him. For Maxwell it is insisted that the court will take judicial notice that the Lebanon-Murfreesboro highway is a "main traveled or through" highway, designated as No. 10 by the State Highway Department on its map of the State's system of trunk line highways; and Chamberlain street is a much less traveled side street; and that Maxwell had the right of way at the intersection, irrespective of whether any "stop" sign had been erected there or not, and Kirkpatrick was bound to stop before entering the highway, and his failure so to do was negligence per se proximately causing the damage sued for.

It seems to be conceded on both sides that the fact that the street stops in, and does not cross, the highway is immaterial; and that the intersection thus made is as much an intersection, within the meaning of our traffic laws, as if the street extended on across the highway. This is true. Johnson v. Warwick, 148 Tenn., 205, 208, 254 S. W., 553; 5 Am. Jur., sec. 288, p. 662; annotations, 31 A. L. R., 488, 78 A. L. R., 1198. The term "intersection;" as here used, means the space common to both streets or highways formed by continuing the curb lines. Wilson v. Mullen, 11 Tenn. App., 319, 327; 5 Am. Jur., sec. 288, p. 663 (and cases cited).

In the absence of a statute on the subject, the common-law rule is that the vehicle first entering an intersection is entitled to the right of way. Knox v. Street Railway Co., 4 Tenn. Civ. App., 481, 4 Higgins, 481, 490; 5 Am. Jur., sec. 289, p. 663. When two vehicles approach or enter an intersection at approximately the same time, it is often provided by statute that the one on the right shall have, and the one on the left shall yield, the right of way. Annotations, 21 A. L. R., 975, 37 A. L. R., 494, 47 A. L. R., 596. Our statute so provides. Code, section 2687(a). Also statutes frequently provide for the designation of certain streets and highways as "stop streets" or "arterial highways," and traffic moving on them has the right of way and crossing traffic must stop before entering them. 5 Am. Jur., sec. 300, pp. 667, 668. We have such a statute. Code, section 2689.

As the parties approached the intersection, Maxwell coming south and Kirkpatrick east, Maxwell was on the left and Kirkpatrick on the right; so Kirkpatrick had the right of way if section 2687(a) controlled; but if the highway was an "arterial" highway under section 2689, and this section controlled, Maxwell had the right of way and Kirkpatrick was bound to stop before entering the highway. These sections follow:

Section 2687(a): "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided as [the section next following] section 8 (Code, section 2688). The driver of any vehicle traveling at

an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.''

Section 2689: ''The state highway department with reference to state highways, and local authorities with reference to highways under their jurisdictions, are authorized to designate main traveled or through highways by erecting at the entrances thereto from intersection highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway; and whenever such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. All such signs shall be illuminated at night, or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights.''

These two sections treat our highways as of two classes: (1) The favored class or the ''main traveled or through highways'' which have been designated by the erection of ''stop'' signs, as provided by section 2689, and (2) the nonfavored class, which includes all streets, roads, and highways which have not been so designated. At all intersections of a favored, and a nonfavored, highway, the vehicle on the former has the right of way and the vehicle on the latter must stop before entering the intersection. At all other intersections the vehicle on the left must yield the right of way to the vehicle on the right.

If we take judicial notice that the highway here involved connects two county seats and is a much-traveled highway (Hurt v. Y. & M. V. R. Co., 140 Tenn., 623, 636, 205 S. W., 437; 26 C. J., pp. 87, 161), this is not enough to make it a favored highway under section 2689. This section does not make state highways or ''main traveled or through highways'' or any highways, highways of the preferred class. It merely delegates the power to do this to the agencies mentioned, the Highway Department and the local authorities; and it prescribes the particular manner in which these agencies shall designate such highways, which is ''by erecting at the entrances thereto from intersection [roads, streets or] highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway.'' Not until such signs have been erected at the highway's intersection with other highways does it become a favored or preferred highway, and ''whenever such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto.'' For these reasons we think that no highway can be a preferred highway under section 2689, and no driver of a vehicle approaching such highway on intersecting highways, streets, or roads is required to stop before entering such highway, unless the stop signs have been erected there by the Highway Department or the local authorities. See Whitehurst v. Howell, 20 Tenn. App., 314, 322, 98 S. W. (2d),

1071. Compare Graves v. Illinois Central R. Co., 126 Tenn., 148, 148 S. W., 239.

It is insisted that the convenience and safety of traffic on a main highway requires that such traffic have the right of way and that traffic on intersecting streets, roads, or highways shall stop before entering such main highway, irrespective of whether any stop signs have been erected at the intersection or not. This may be true, but it is for the Legislature and not the court to provide the remedy. "A preference in certain streets or highways must be created by statute or ordinance. In the absence of such a statute or ordinance, there is no preference—as, for example, between hard surface roads and intersecting unpaved roads." 5 Am. Jur., sec. 300, p. 668. "It might be prudent and politic for the Legislature to provide that a preference should be given to motor vehicles driven over primary and trunk lines as against those traveling over side roads, as is done in some cities where those approaching boulevards are required to slow down or stop before entering or crossing such favored roads, but the making of such a law or regulation is a legislative function, and is not one for the courts." Kersting v. Reese, 123 Kan., 277, 281, 255 P., 74, 76.

It results that, in the absence of a showing that any stop sign had ever been erected either by the highway department or the local authorities at the entrance of Chamberlain street into the highway, the highway was not a favored or arterial highway under section 2689, and there was no absolute duty upon Kirkpatrick to stop before entering the intersection. On the contrary, under section 2687(a) he had the right of way and Maxwell, being the driver of the vehicle on the left, was under the duty of yielding this right of way to him.

But from this it does not necessarily follow that Kirkpatrick was not guilty of negligence. These statutes do not cover the whole duty of motorists at the intersections of streets and highways. In addition to the requirements of these statutes, the motorist is under the duty of exercising ordinary care to avoid injuring another on the highway. 5 Am. Jur., sec. 302; annotations, 58 A. L. R., 1199, 81 A. L. R., 185, 89 A. L. R., 838. Even though he has the right of way, a motorist is guilty of negligence if he continues after seeing that the other motorist does not intend to yield this right to him. 5 Am. Jur., sec. 302, p. 668. Upon the view of the evidence most favorable to Maxwell, which the trial judge accepted, Kirkpatrick entered the intersection when Maxwell was 50 or 60 feet from it and was approaching "pretty fast"—about "35 Miles" per hour, and when the highway, due to snow and ice upon it, was in such condition that it was impossible for Maxwell to stop before passing the intersection. We think that Kirkpatrick.

though not guilty of negligence in failing "to stop before entering an arterial highway," as charged in the warrant, was guilty of negligence in that he failed to exercise due care in entering the intersection under the circumstances here shown.

 2. But we also think Maxwell was guilty of contributory negligence. He was under the duty of yielding the right of way under the statute, section 2687(a), and was under the duty of approaching the intersection with a proper lookout and with his car under control. Whitehurst v. Howell, 20 Tenn. App., 314, 330, 98 S. W. (2d), 1071-1081; 5 Am. Jur., sec. 287, p. 662; Wilson v. Mullen, 11 Tenn. App., 319; Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App., 618, 642. The highway was covered with snow and ice, he was approaching, as he says, at the rate of 35 miles per hour. By his own showing, when he put on his brakes his car skidded from 150 to 250 feet before striking the tree. He also admitted that he could have safely passed to the left of Kirkpatrick's car "if it had not been for the snow on the left side of the road."

It results that Kirkpatrick's assignments of error are sustained, the judgment of the circuit court is reversed, and the suit is dismissed. The costs of the appeal are adjudged against Maxwell's administrator and the surety on his appeal bond, it appearing that Maxwell died pending this appeal and that this cause has been revived in the name of his administrator.

Faw, P. J., and Crownover, J., concur.