## MRS. JOY SPENCE and LAWSON SPENCE v. DR. JOHN E. CARNE.—292 S. W. (2d) 438.

Western Section. July 13, 1954.

Petition for Certiorari denied by Supreme Court, December 17, 1954.

582

M. Watkins Ewell and E. T. Palmer, Dyersburg, for plaintiffs.

Fenner Heathcock, Union City, and Melvin T. Weakley, Dyersburg, for appellee.

AVERY, P. J., (Western Section). This record involves two suits originating in the Circuit Court of Dyer County, Tennessee by Mrs. Joy Spence and her husband Lawson Spence, in which suit by Mrs. Spence she seeks to recover damages for personal injuries received in a collision by the Buick automobile driven by her and owned by her said husband with an Oldsmobile driven by defendant Dr. John E. Carne and owned by him, at the intersection of King Avenue and McGaughey Street in the city of Dyersburg, Tennessee on the 10th day of March, 1952. In the suit by Mr. Spence he seeks to recover damages to his Buick automobile, loss of service of his wife during the time of her illness resulting from her injuries, and expenses incurred by him in connection therewith.

The declarations in the cases are essentially the same, insofar as the allegations of negligence on the part of defendant are concerned. Mrs. Spence brought suit for $25,000 and Mr. Spence for $5,000.

The respective declarations are in three counts, the first count charging common law negligence. The second count charging statutory negligence for reckless driving as follows:

"2681. Reckless driving.—Any person who drives a vehicle upon a highway recklessly, or at a speed, or in a manner so as to endanger, or be likely to endanger life, limb or property of any person, shall be guilty of reckless driving.

"2682. Lawful speed; reckless driving; starting, stopping or turning.—(a) Any person driving a vehicle on a highway shall drive the same at a careful speed not greater nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing. Any person who shall drive any vehicle upon a highway at such a speed as to endanger the life, limb, or property of any person, * * *, shall be prima facie guilty of reckless driving.

"(b) Any person who shall drive at a speed exceeding the speeds set forth in this subsection shall be prima facie guilty of reckless driving:

\* \* \* \* \* \*

"Second: Thirty miles an hour in a residential district, as defined herein.

\* \* \* \* \* \*

"(c) Reckless driving within the meaning of this section shall be deemed to include the following offenses, which are expressly prohibited:

"First: Driving a vehicle when not under complete control, or with inadequate or improperly adjusted brakes.

 * * * * * *

"Sixth: Exceeding a reasonable speed under the circumstances and traffic conditions obtaining at the time."

"2687. Meeting and overtaking vehicles, turning at intersections, signals,—(a) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in section 8 (sec. 2688). The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

The third count charges violation of the official traffic code ordinance of the city of Dyersburg, as follows:

"City of Dyersburg—Ordinance

"Chapter II

"Required Obedience to Traffic Regulations

"Section 16.

"It shall be a misdemeanor for any person to do any act forbidden or fail to perform any act required in this ordinance.

 * * * * * *

"Chapter II

"Obedience To Traffic Control Devices

"Section 21.

"(a) Obedience to Official Traffic Control Devices: The driver of any vehicle and any pedestrian shall obey the instructions of any official traffic control device applicable thereto placed in accordance with the traffic ordinances of this city unless otherwise directed by a police officer subject to the exceptions granted the driver of an authorized emergency vehicle in this ordinance.

\* \* \* \* \* \*

"Section 47.

"Any person who drives any vehicle in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

"Section 48.

"(a) No person shall drive any vehicle on any street or roadway at a speed greater than is reasonable and prudent under the conditions then existing.

"(b) Where no special hazard exists, the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and is unlawful:

"1. \* \* \*

"2. Thirty miles per hour in residence district.

\* \* \* \* \* \*

"(c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection or when special hazards exist with respect to pedestrians or other traffic or by reason of weather or other roadway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

To each of the foregoing declarations the defendant, Dr. John E. Carne entered pleas of general denial and contributory negligence. The original suits were instituted on the 22nd day of September, 1952 and on the 13th day of October, 1952, Dr. Carne filed a joint counter-declaration for each case, and which is in two counts, the first count of which charges common law negligence by Mrs. Spence in the operation of the Buick automobile in that she "carelessly, recklessly, wrongfully and negligently run and drive said automobile upon and against the 1951 model Oldsmobile—while being driven by Dr. Carne and in which accident he was physically injured, and by the count seeks $10,000 personal injuries damage." The second count merely reiterates the negligence etc. charged in the first count and seeks recovery of $1,000 for damages to Dr. Carne's automobile.

Pleas of general denial and contributory negligence were filed by Mr. and Mrs. Spence, to the counter-declaration.

In this opinion the parties are referred to by name rather rather than by status, since this is both an original and counterclaim action.

The city of Dyersburg had erected and there was operating at the time of this accident the conventional type traffic light over the intersection of King Avenue and McGaughcy Street by which the traffic was supposed to be controlled. At the time of the collision Mrs. Spence was driving north on King Avenue and Dr. Carne was driving east on McGaughcy Street. Each claims that the other came into the intersection against the traffic control signal, or at a time when the traffic control signal showed red. There is no proof in the record that either driver was out of their regular line of traffic space, each traveling along the righthand side of the respective streets, and the front end of the Oldsmobile driven by Dr. Carne struck the left side of the Buick automobile driven by Mrs. Spence, and the photographs properly identified by the proof, and as exhibits in the record show that the principal impact was approximately against the left door of the Buick.

The cases were consolidated and heard in the lower court, being tried to a jury, and there was a verdict for Mrs. Spence of $15,000, and a verdict for Mr. Spence of $3,000, both against Dr. Carne. On motion for new trial in each case the trial judge remitted $5,000 of the verdict in favor of Mrs. Spence, which remittiture was accepted under protest by her and judgment for $10,000 in her favor was entered, and for the full $3,000 in favor of Mr. Spence. Dr. Carne preserved exceptions respecting each judgment, prayed, obtained and perfected his appeal to this Court. Mrs. Spence excepted to the remittitur, prayed and perfected her appeal to this Court.

The injuries proven to the body of Mrs. Spence were those of a comminuted broken right humerus or upper arm bone and a depressed comminuted fracture of the malar or right cheek bone, together with contusions and cuts and bruises about her body, particularly her chest. The arm was treated by being placed in a hanging cast and confined to a sling for about two months. The cheek bone required open operative procedure to elevate the depressed fragments leaving a scar about her right eye. The declaration alleges and the proof shows the usual pain and suffering accompanying such injuries.

Dr. Carne has filed 18 separate assignments of error, many of which will be discussed together in this opinion.

Mrs. Spence assigned two errors, both going to the remittitur required by the judge respecting the verdict of the jury.

The first assignment of error by Dr. Carne is that there is no evidence to sustain the verdicts of the jury. The second and third are that the court erred in refusing to instruct the jury, at the conclusion of all proof to return a verdict in favor of Dr. Carne in the suit of Mrs. Spence and in favor of Dr. Carne in the suit of Mr. Spence, upon the motions seasonably made by Dr. Carne to that effect, both based upon the lack of evidence to sustain a verdict.

While these assignments require an examination of the entire record of facts, it is unnecessary to burden this opinion with a recitation of minute details surrounding the collision of the two cars. It occurred at an intersection marked by a signal supposed to control the traffic, which signal displayed green lights for a "go" signal, red lights for a "stop" signal and orange lights for "cautious" signals. The physical facts, as exhibited by

the photographs, as well as that offered by the proof indicated that Mrs. Spence entered the intersection first. The testimony is contradictory. Mrs. Spence had with her a maid named Reuberdia Perkins. Dr. Carne was traveling alone. Each driver testifies that he had the "go" signal from the traffic light. Many authorities have detailed the rule governing the appellate court in connection with such assignments of error, some of which are properly referred to in the brief of Mr. and Mrs. Spence.

Upon the motion for directed verdict, and in the examination of the record to determine if there is any evidence to support a verdict it is our duty to consider only the facts proven in support of the party against whom such contention is made, and all reasonable inferences to be drawn therefrom, disregarding all countervailing evidence, and if there is any competent evidence about which the minds of reasonable men could disagree, it is proper to overrule such assignments of error. It is only necessary to refer to the cases of D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613 and Monday v. Millsaps, 37 Tenn. App. 371, 264 S. W. (2d) 6, 14; McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 360; Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Mitchell v. Farr, 32 Tenn. App. 200, 222 S. W. (2d) 218. The foregoing three assignments must, therefore, be overruled.

Substance of the testimony of the only three eye witnesses to the collision, as shown by the record; Reuberdia Perkins said that the traffic light at the intersection where the accident occurred was red as she and Mrs. Spence passed through the intersection of Masonic and King Streets, one block from the point of collision; that the

light changed to green when they were about half way in the block between the two intersections, estimating the distance between the Spence car and the intersection at the time of the light change to be 50 ft.; that the two cars were about in the center of the intersection when the collision occurred, Dr. Carne's car striking the Spence car on the left side knocking it against the water plug in the northeast corner of the intersection; that the collision knocked her "nearly crazy." She got out of the car and sat on the sidewalk, but does not remember that; she does not remember seeing Dr. Carne after the collision until she saw him up at the hospital that same day; that Mrs. Spence was driving slow at the time, she can't estimate speed; she paid no attention to the middle or orange light; that Mrs. Spence slowed her speed as she approached the intersection, and "picked up a little bit" when the light changed to green; that she first looked to her left and that the traffic was clear, then looked to her right and first saw Dr. Carne when the Spence car was in the middle of the intersection; that his car was just "pawing" coming right on us; she explained what she meant by "pawing," saying it was just "raising up," and after he hit the Spence car "I don't know anymore about it;" that Dr. Carne's car was going fast; she doesn't know if Mrs. Spence ever applied her brakes. She also brought suit against Dr. Carne for her personal injuries.

Mrs. Spence says she is 27 years of age, that she was driving Mr. Spence's car, that she first saw the traffic light in question when it was red, that she was about even with the first street south of the intersection in question at that time; that she was driving probably 10 miles an hour. That she was looking directly at that light and

could see it at all times as she approached. That she
was about at the second house on the left side of King
Street from the intersection when it turned from red to
green. That she proceeded, started through the intersec-
tion and was hit on the left side of her car at about the
door. That she couldn't get out of her car and Dr. Carne
looked in and she said, "You have run my green light and
who are you and where are you from?" and he said "I
am Dr. Carne." She then said "Will you please get me
an ambulance and help me?" and that Dr. Carne an-
swered, "Somebody call an ambulance," but said nothing
else to her. That she picked up her speed a little after
the light changed. That she was in the center of the
intersection and just saw Dr. Carne's car on the street
coming toward her. She refused to state whether she
applied the brakes or not.

Dr. Carne stated that it has been raining and the
streets were wet at the time of the collision. Both streets
were blacktopped. As he approached the intersection in
question he was driving between 20 and 25 m.p.h.; had
his car under control, and was on the lookout ahead. That
the house on the southwest corner of the intersection ob-
structs the view of one driving east on McGaughey to-
ward King. That as he approached the intersection the
traffic light showed green. That he saw Mrs. Spence ap-
proaching the intersection about the same distance from
it that he was when he saw her; that her speed was
approximately the same as his; that he was 45 or 50 feet
from the intersection when he first saw her and she was
probably a little closer. That approaching the light while
green he had the intention of going through the intersec-
tion and discovered she was making no effort to stop.
That he applied his brakes with all of his force in an

effort to avoid an accident and his tires skidded about 33 feet. At about the time he entered the intersection and applied his brakes the orange light came on; that both the orange and green were showing in his direction at that moment; that Mrs. Spence made no effort to check her speed and that his car struck the one she was driving in the left side, the impact deflecting her car at approximately a 10 or 15 degree angle and it struck the fire plug. After both cars were completely still there was a distance of about 6 feet between them. He did not leave the scene until the police arrived and he made a report. While he was there on that occasion, immediately after the collision, he looked carefully at that light from all directions and watched it work several times on each street and that when the "caution" or orange light showed on McGaughey there was no light of any kind "neither red, green nor yellow" showing on King Street and that the lights stayed out on King until the red lights showed on McGaughey; that he discussed that situation with the officers Marvin Middleton and Richard Guest. That he had been back to that light on four or five different occasions in the next three or four days after the accident and that it was working the same way then that it worked the moment he saw it after the accident. That he didn't check his speed before he put on the brakes because the light was green. That he passes that intersection several times a day.

Assignment of error No. IV is the only assignment of error, with respect to the charge of the court which has given this Court very great concern. This assignment is leveled, principally at that part of the charge of the court with respect to the approach and entry by Dr. Carne as he traveled along McGaughey Street into its intersection

with King Street, the traffic at that intersection being directed by the traffic light in question, wherein the court said:

"* * * or that he approached and entered said intersection of King and McGaughey Street at approximately the same time the automobile driven by Joy Spence approached and entered the same, without yielding the right of way, in violation of secs. 2681, 2682, 2687 and 2688 of the Code of Tennessee, then he, Dr. Carne, would be guilty of negligence and if such negligence of Dr. Carne, was the direct and proximate cause of the collision, the accident and the injury to plaintiff, Joy Spence and damage to plaintiff, Lawson Spence's automobile, loss of service of his wife and medical and hospital bills, then the defendant, Dr. Carne, would be liable in these cases under count 2 thereof of plaintiffs' declarations."

When the learned Judge reached that portion of his charge relating to the cross-action by Dr. Carne against Spence and his wife, wherein he was stating to the jury the laws relating to her entry into said intersection of streets over King Street he said:

"So, in this cross-action of Dr. Carne's, if you find from the evidence (here the court charged family purpose doctrine, and continued) that she drove said car over said King Street in a fast and reckless rate of speed, without having said Buick car under complete control and without keeping a proper lookout ahead, and into the intersection in violation of a traffic control signal, and while the signal was a red light burning in the direction she was driving, indicating she should stop and not enter the intersection,

then she would be guilty of negligence, and if the negligence of Mrs. Joy Spence was the direct and proximate cause of the collision, the accident and injury to Dr. Carne, and damage to his Oldsmobile, then she would be liable; and if you find she was driving said automobile of her husband as a family purpose car, as heretofore explained to you in this charge, then her husband, Lawson Spence, would be liable in this case under the cross-action of cross-complainant, Dr. Carne.''

The question to be determined by this Court is whether or not the court has charged a certain degree of care required of Dr. Carne, as he approached the intersection governed by the traffic control signal and a different or other degree of care required by Mrs. Spence as she approached the same intersection governed by the same traffic control signal? The proof clearly shows that there was only one traffic signal governing the traffic at that intersection. In order to properly determine the correct answer to the posed question it is necessary to analyze the respective parts of the charge which go to the defense of Dr. Carne against the action, as charged in the declaration of Mr. and Mrs. Spence and that of Mrs. Spence as charged in the cross-action by Dr. Carne. In explaining the action of Mrs. Spence, relating to contributory negligence the court said:

''The plaintiff, Mrs. Joy Spence, driver of the Buick automobile was bound to exercise reasonable care and prudence for her own safety, and the care of the automobile she was driving, in the operation of said Buick automobile over King Street and entering into the intersection of King and McGaughey Streets, and if, at the time and place of the collision, the acci-

dent, and in the matter of the accident, in so approaching and entering into and upon said intersection of said streets, she did something that a reasonable prudent person would not have done, or if she omitted to do something that a reasonable prudent person would have done, under the circumstances, then she would be guilty of negligence, and, if, the plaintiff, Mrs. Joy Spence's negligence caused or contributed proximately to the collision, the accident and her injuries, and damages to the automobile of Lawson Spence, she cannot recover in her case; neither can Lawson Spence recover in his case, for under these circumstances, both actions would be barred by the contributory negligence of the driver, Mrs. Joy Spence.''

And as to the same matter, relating to the cross-action of Dr. Carne, the court said:

''Now, the driver of the Oldsmobile, Dr. Carne, was bound to exercise reasonable care and prudence for his own safety, and for his own automobile, he was driving, as well as the safety of others, and if, at the time and place of the accident, and in the matter of the accident, he, Dr. Carne, in driving his Oldsmobile over McGaughey Street in an eastern direction, and approaching and entering into and upon the intersection of King and McGaughey Streets, he did something in the operation of his automobile that an ordinarily prudent person would not have done under the circumstances, or if he omitted to do something in the operation of his automobile an ordinarily prudent person would have done under the circumstances, he would be guilty of negligence, and if such negligence of said Dr. Carne was the direct and prox-

imate cause of the accident or contributed proximately thereto then he cannot recover against the cross-defendants, Mrs. Spence and Lawson Spence, for under these circumstances his counter action would be barred by his own contributory negligence, and under these circumstances your verdict will be for the cross-defendants, Lawson and Mrs. Spence, in said cross-action.''

With respect to the rights of each party in the operation of their automobile on the streets of Dyersburg the judge charged the jury as follows:

''The proof in these cases show that the accident resulting in the injury to the plaintiff, Joy Spence, and damage to the automobile of Lawson Spence occurred on the 10th day of March, 1952, about 3:30 P. M. at the intersection of King Street and McGaughey Street in Dyersburg, Dyer County, Tennessee.

''While the driver of the Buick automobile, Joy Spence, and the driver of the Oldsmobile, Dr. Carne, both had a right to drive their respective automobiles over said streets of Dyersburg, and the intersection thereof, of King and McGaughey Streets, it was their legal duty, and they both were required to have their respective motor vehicles under reasonable control, and to be on the lookout ahead for pedestrians and vehicles which might appear upon said streets, and the intersection thereof, or in the use thereof; and both were required to exercise reasonable care for their own safety and the safety of others, to avoid injury to themselves and others, and both were required to observe the rules and

regulations prescribed and set forth in the Statutes of the state, and both were required to adhere to and observe ordinances and rules of traffic, prescribed and set forth in the traffic ordinance of said Town of Dyersburg.

"The basis of this action is negligence. Negligence is defined to be the want of ordinary care, such care as an ordinarily prudent person would use under the same or similar circumstances. It is also defined to be the doing of something that an ordinarily prudent person would not do under the same circumstances, or the omission to do something that an ordinarily prudent person would do under the same circumstances."

We repeat sec. 21(a) of the Dyersburg Traffic Code Ordinance:

"The driver of any vehicle and any pedestrian shall obey the instructions of any traffic control device applicable thereto placed in accordance of the traffic ordinances of this city unless otherwise directed by a police officer subject to the exceptions granted the driver of an unauthorized emergency vehicle in this ordinance." Stipulation Record 284.

While this ordinance is the basis of the negligence charged in Count 3, in some respects it is in direct conflict with Sub-section (a) of sec. 2687 of the Code of Tennessee relative to the vehicle on the left yielding the right of way to a vehicle on its right approaching an intersection of streets at approximately the same time, for this ordinance specifically provides that persons crossing at such intersections "shall obey the instructions of any traffic control device applicable thereto." Thus a trav-

eler approaching and entering an intersection with the green or "go" light in his direction, should proceed through the intersection, under provisions of this ordinance. If such a one should stop suddenly with the green or "go" light in his direction, at such an intersection, and be stricken by a vehicle traveling immediately behind him, the one so stopping would be negligent in doing an act which was in direct conflict with the instructions of the signal directing traffic, set out in the ordinance. Thus it could put a person in position to be liable, under the State statute, for failing to yield the right of way to a vehicle approaching from his right in which there would be an impact of these vehicles, and at the same time, if he was stricken from the rear by a vehicle following him through the intersection, be liable under the city ordinance for any damage done to that vehicle or the occupants thereof.

It is strongly insisted that sec. 2689 of the Code of Tennessee, which is in part, "The highway department with reference to roads and highways, and local authorities with reference to roads, streets and highways under their jurisdiction, are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting roads, streets or highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto", renders inoperative, within their municipalities, the right of way statute, Code sec. 2687, and that the city of Dyersburg having passed the ordinance quoted herein above, and erected the traffic directing signal at the intersection in question, renders,

inoperative at least, that part of sec. 2687 relative to the requirement that when two vehicles approaching an intersection at approximately the same time, the one on the left shall yield the right of way to the one on the right. We think this contention is sound and that when the court charged the jury, in the language set out and quoted in the first quoted paragraph from the charge on page 6 of this opinion [292 S. W. (2d) 444], even though he expressly limited that provision to the negligence charged in Count 2 of the declaration, and taking the entire charge into consideration, he committed error.

██ From a careful examination of the charge of the court relating to negligence of Dr. Carne it seems to us that the effect of his charge is to instruct the jury that even if Dr. Carne approached the intersection with the green or "go" signal directing his progress through it and that Mrs. Spence approached the intersection at about the same time with the red or "stop" signal directing her not to proceed, the fact that she was to the right of Dr. Carne would require him, under the statutory provisions, to stop his car and wait until Mrs. Spence had passed through the intersection because the statute, under the conditions existing at that intersection, gave the vehicle to the right the right-of-way through the intersection. In other words it appears that the jury was instructed that Dr. Carne had to be governed by both the traffic signal and the city of Dyersburg ordinances relative thereto, and the statutory provision required by the sections of the Code of Tennessee as set out in the charge. We do not think that the statutory provisions as set out in said sections and the signal control system directing traffic at the same intersection can be made to apply simultaneously. Either the ordinances and traffic

signals prevail over the statutory provisions or vice versa. It is unreasonable to require drivers of motor vehicles, through intersections where traffic directing signals are set up, such as prevailed at the intersection in question, to always comply with the designated statutory provision regarding the yielding of the right-of-way through such intersection to the vehicle on the right that approached the intersection at approximately the same time. Unquestionably the municipality had a right to regulate its traffic, and the most modern system of directing traffic at intersections is that of "stop" and "go" lighting devices. By reason of the provisions of sec. 2689 of the Code of Tennessee 1932 motorists are required to obey stop signs erected at street intersections, within a municipality, even if the municipality has no ordinance authorizing the construction of such signs, but actually has placed them there and they have been so placed for a reasonable length of time. Trimble v. Bridges, 27 Tenn. App. 320, 180 S. W. (2d) 590 and 591; Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 116 S. W. (2d) 340.

In accord with the foregoing we feel constrained to and do sustain assignment of error number IV.

We think this would be correct without the provisions of sec. 2689 of the Code. By sustaining said assignment of error No. IV we do not mean to hold that a motorist having been directed to proceed into an intersection by the traffic directing light would be authorized to continue through the intersection regardless of the safety of others having entered the intersection, whether to his right or left, if by reasonable care and diligence, under the circumstances, he could have avoided a collision with such other vehicle. The above quotation from the charge,

which we hold to be error, is separated by the disjunctive "or" from the other parts of the charge, relative to Count 2 of the declaration, defining what would be negligence of Dr. Carne, under the circumstances of this case, and in accord with the theory of Mr. and Mrs. Spence. Neither do we mean to hold that a motorist cannot, by acts of carelessness and negligence waive his right to proceed into and through an intersection, but that the bare quoted statement from the charge in the absence of explaining the light factor is error.

In assignment of error No. V the charge of the Court is attacked because he said to the jury that as a part of the damages to which Mrs. Spence might be entitled the element of "loss of time from work if any, she has sustained" constituted a part of her damage. In support of this assignment Dr. Carne argues that since the passage of the married women's act did not affect a wife's marital duties and that her husband, as at common law, might recover for loss of services of his wife on account of her personal injuries that the wife is entitled to no loss of time as a part of the damage. It is observed that the Court said, "if any," meaning that if the proof showed that she had lost time for which she would have otherwise drawn a salary, wages or pay, she would be entitled to recover, and no proof appearing in the record that she was drawing any salary, wages or compensation, it follows that the jury was not erroneously influenced by such a charge.

The cases of McIrvin v. Lincoln Memorial University, 138 Tenn. 260, 262, 197 S. W. 862, L. R. A. 1918 C, 191; City of Chattanooga v. Carter, 132 Tenn, 609, 179 S. W. 127 and Johnston v. Southern R. Co., 155 Tenn. 639, 299 S. W. 785, 55 A. L. R. 932 are relied upon to sustain this

assignment of error. While these cases hold that a husband is entitled to recover loss of services of his wife on account of her personal injuries negligently inflicted, neither of them go to the point of holding that a wife could not recover any salary, wages or compensation of that character which she might have lost as the result of her injuries. Therefore this assignment must be overruled. See Tennessee Central R. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452.

■ ■ Assignments of error Nos. VI and VII are leveled at the refusal of the Trial Court to charge special requests numbers 5 and 20 by Dr. Carne. Both of these have reference to the alleged failure of the Court to properly charge respecting the duty of Mrs. Spence to keep a proper lookout ahead, and/or looking directly ahead without keeping a lookout for cars on the intersecting streets. This cannot be error for, as hereinbefore referred to, in the general charge the Court had stated that both Joy Spence, the driver of the Buick automobile and Dr. Carne, the driver of the automobile were required "to be on the lookout ahead for pedestrians and vehicles which might appear upon said streets, and the intersections thereof, or in the use thereof," and had further expressly stated that both were required to exercise reasonable care for their safety and safety of others. While the statements of Mrs. Spence, as shown in the evidence, are very slight concerning her lookout ahead and for vehicles traveling on the intersecting street in question, she detailed watching the light ahead and how she moved toward the intersection, and it is a question for the jury to determine whether she observed a proper lookout ahead. Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294; Waller v. Morgan, 23 Tenn. App. 355, 133

S. W. (2d) 614, 616 and other cases cited in both of these opinions. . Thus these two assignments must be overruled.

Assignments of error Nos. VIII and IX leveled at the refusal of the Court to charge special requests numbers 7 and 9 by Dr. Carne, as follows:

"If you find that both Mrs. Joy Spence and Dr. John E. Carne were guilty of concurring acts of. negligence in connection with the collision and that the negligence of each caused or contributed to the accident, then both the complainants in the original suits and the cross-complainant in the cross suit would be barred from recovery and you should return your verdict for the defendant in the original suits and the cross-complainant in the cross suit

"If you find that Mrs. Spence and Dr. Carne were both guilty of acts of negligence which together constituted the proximate cause of the injury the negligence of Mrs. Spence however slight, will bar recovery by her or by her husband."

While the foregoing requests state the law, an examination of the general charge with respect to the charges of negligence against each of the drivers of the cars in question and the proximate cause of the accident and resulting damages are not confined in one statement of the charge, the general charge does charge the jury properly with respect to each one separately under the original action and the cross-action, and to have charged the jury these special requests would have been but a repetition of what the Court had said with respect to concurring negligence and the resulting proximate cause of the accident. It is the duty of the Trial Court to give a

proper charge with respect to a driver of a motor vehicle keeping a lookout ahead, and if he does not do so, as stated in the case of Whitehurst v. Howell, 20 Tenn. App. 314, 330, 98 S. W. (2d) 1071, it would be error for him to refuse a special request, but these cases do not mean that he has to charge specially on that point when the general charge has completely covered it. As to the negligence of Mrs. Joy Spence constituting the proximate cause the Court said:

"If the plaintiff, Mrs. Joy Spence's negligence caused or contributed proximately to the collision, the accident and her injuries, and the damages to the automobile of Lawson Spence, she cannot recover in her case, neither can Lawson Spence recover in his case, for under these circumstances, both actions would be barred by the contributory negligence of the driver, Mrs. Joy Spence."

Then when the Court charged the jury on the same point with respect to Dr. Carne's negligence causing the injury and resulting damage, that he could not recover under his cross-action, he did so in approximately the same words. The Court did not have to use the words "joint or concurrent negligence" in order for the jury to understand his charge in that regard.

Assignment No. X is leveled at special request No. 8 as follows:

"If you find that Mrs. Spence had the right-of-way in this case over Dr. Carne, Mrs. Spence would have been guilty of negligence if she continued into the intersection after she saw or should have seen that Dr. Carne did not undertake to yield the right-of-way to her."

■ This request is based upon the opinion of this Court in Maxwell v. Kirkpatrick, 22 Tenn. App. 21, at page 28, 116 S. W. (2d) 340. An examination of that case and others reveals the fact that this special request does not properly state the law, and particularly so in view of the traffic ordinance of the city of Dyersburg hereinabove quoted. For one to be required to stop when they saw that another did not intend to stop at the intersection would perhaps require a person to stop exactly where they would get killed, or to stop when they knew that to do so would put them in front of the approaching or other vehicles. That in itself would be negligence. Thus this assignment must be overruled.

Assignments of Error Nos. XI through XIV assign as error the failure or refusal of the Trial Court to charge special requests numbers 10, 11, 12 and 16 by Dr. Carne. These special requests relate to the alleged defective condition of the traffic directing light erected above the involved intersection of the streets. Special request No. X is as follows:

"The only purpose of an electric traffic light is to direct and control traffic at the intersection. Consequently, a driver of an automobile is entitled to rely upon such light as he approaches and enters the intersection. If the traffic light is not working properly, a driver who is not aware of the defective condition of the light is not negligent in relying upon such traffic light."

Special request No. XI is in the following words:

"If either Mrs. Spence or Dr. Carne was deceived or misled by the defective condition of the traffic light at the corner of King and McGaughey Streets into

entering the intersection the one so deceived or misled by said light, in the absence of any negligence proximately contributing to the accident is not liable to the other in damages.''

Special request No. XII is as follows:

"If the defective condition of the traffic light, without any *concurring* proximate negligence on the part of either Mrs. Spence or Dr. Carne, was the direct and proximate cause of the collision, then neither Mrs. Spence nor Dr. Carne is entitled to recover of the other.''

Special request No. XVI is as follows:

"If the traffic light showed green to both drivers approaching the intersection from cross streets, neither driver can be deemed to be negligent in proceeding into such intersection.''

While it may be true that the facts of this case, as revealed by this record required a charge with respect to the rights of the parties approaching a defective light signaling device in directing traffic at the intersection, yet neither of the special requests, as set out above is factually or legally correct. Regardless of what the defect may have been in the traffic signaling device each of the parties were required to observe the traffic approaching the intersection and within the intersection, and under the proper charge of the Court, should he have undertaken to have gone into an explanation to the jury respecting the defective signaling instrument, he would have had to go much further than either or all of the requests immediately above quoted.

Count III of the Declaration, charged Dr. Carne, with violation of the municipal traffic ordinances, therefore with negligence in connection with his speed, his observations, his obedience to his instructions of the traffic signal and his disregard for the safety of persons or property.

In connection with the consideration of these particular special requests it is proper to observe the fact that there is no Assignment of Error to the effect that the Court failed to charge, in any manner, the law with respect to possible existing defects in the involved traffic directing signal. The Assignments are simply that the Court erred in failing to charge these separate distinct requests.

An examination of the record reveals that Dr. Carne testified that as he approached the intersection the light was green and that just as he entered the intersection the amber light came on with the green and at that particular moment he applied his brakes, with such force that the car wheels skidded 33 feet.

Mrs. Spence testified that she had the green light in her direction from a point within approximately 50 feet of the intersection and until she had entered into the intersection. The substance of the testimony of her maid is the same. Both Mrs. Spence and her maid testify that they observed the red light in her direction up to the point of approximately 50 feet of the intersection when the green light appeared. There is no testimony by Dr. Carne that he ever saw or observed a red signal on that occasion. Evidently because of the testimony of the parties themselves, as to the working condition of that light at the moment of this collision, the court did not see fit to charge the jury with respect to the relative care or negligence of the parties as affected by a defective light.

However that might be, the text writers have laid down the following general principles:

"A special traffic ordinance relative to duty to obey traffic lights supersedes a general ordinance relative to right-of-way at intersection.

"Drivers approaching intersections where traffic light or other automatic controls are installed must be on the lookout for such warnings and have their vehicles under such management as will enable them promptly to obey the signals as given.

"Whether a driver's conduct upon reaching a crossing so protected measures up to the standard of ordinary care, the lights or signals being in his favor at the time, must be determined by the circumstances present at the time of such conduct.

"As a general rule, where a yellow or caution light is displayed a motorist must come to a stop, if he has not already entered the intersection.

"Even though the light shows green at an intersection an approaching motorist has no absolute right to proceed through without reducing speed in an attempt to beat the light, but must have his car under such control as a reasonably prudent person would, in view of the possibility that the traffic light may change; neither may he disregard the ordinary precaution of maintaining a lookout and observing conditions on the cross street. Blashfield, Permanent Ed., sec. 1040, Traffic Officers or Lights, etc at Intersections, pp. 365, 366, 367.

"The right of way as between vehicles at intersections where traffic is controlled by traffic signals must

be determined by the special rules contained in the act providing for the control of traffic at such intersections. Ordinarily, vehicles facing the green light have the right of way.'' 60 C. J. S., Motor Vehicles, sec. 362, Intersection controlled by traffic signal, p. 874.

"The right of way of the favored driver at an intersection is not an absolute right; it does not relieve the driver of compliance of the rules of the road, and it may be forfeited by non-compliance therewith. Under some circumstances the favored driver may be required to yield the right of way. * * *

"The right of the favored driver is not absolute, but is, rather, relative; that is, the right of way is not absolute in the sense that the favored driver is always justified in asserting and attempting to exercise the right of way, it having been said that the right of way rule is a rule of doubt under balanced conditions. Thus, the fact that one has the right of way does not warrant him in proceeding regardless of conditions or consequences or the safety of others.'' 60 C. J. S., Motor Vehicles, sec. 363, Favored Driver, pp. 876-877 and 878.

"The favored motorist is not relieved from, and, in fact, his right of way may be lost or forfeited by his failure to comply with, rules and regulations governing the operation of motor vehicles generally, such as the obligation of being on the alert; having his car under control; operating it at a lawful, proper, and reasonable rate of speed * * *.'' 60 C. J. S., Motor Vehicles, sec. 363, Compliance with The Rules of Road, pp. 878 and 879.

"The driver on the favored highway does not have the absolute right-of-way in the sense that he is not bound to exercise any care toward traffic on intersecting highways; he is bound to exercise ordinary care." 5 Am. Jur. Automobiles, sec. 302, p. 668.

When we apply the foregoing rules, to any facts in this case, in attempting to show the effect of a defective condition of the traffic signal device, we at once observe that neither of the special requests could have possibly met the requirements of the law relating to the care required of a motorist in approaching a defective traffic signal device, such as an automatic lighting device. If the proof had shown that the lighting device in question was working in a defective manner, at the time of the accident, the Court should have given in charge to the jury the law relative thereto, but had he charged either or all of the special requests in connection with defective signal devices, he would have been in error. The Court is not required to charge a special request or several special requests which only partially state the law. Therefore these Assignments of Error Nos. XI through XIV must be overruled.

Assignment of Error No. XV is level at the refusal of the Court to charge Dr. Carne's special request No. 24, which is as follows:

"A motorist who has approached an intersection in a lawful and reasonable manner in a time when the traffic signal is in his favor is under no duty to come to a stop upon a change of the signal after he has entered the crossing or when he is so close thereto that he cannot safely stop, but, instead, has the right and even the duty, of proceeding through the crossing."

Counsel for Dr. Carne have planted their legal position, with respect to this assignment, upon a statement in 5 Am. Jur. 671 to the effect that "A car having started across in accord with the signal light is entitled to complete the crossing notwithstanding a change of lights."

This request, as framed, does not take into consideration the fact that a motorist is required to exercise a reasonable degree of care, to avoid a collision, after he had entered the intersection, regardless of the fact that the light might have changed after he entered. Neither does it have application in the present case because the statement from Am. Jur., upon which it is based, is a simple sentence from sec. 309 of p. 671 and which section refers principally to "Vehicles" as distinguished from automobiles. The sentence immediately preceding the quotation refers to what has been said in sec. 308 with respect to vehicles and pedestrians. The entire sec. 309, from which counsel's sentence has been lifted is as follows:

"Similar rules apply as between vehicles at intersections governed by traffic signals as apply between a vehicle and an automobile. A car having started across in accord with a signal light is entitled to complete the crossing notwithstanding a change of lights. A correlative duty rests upon the automobiles approaching on intersecting streets after the change of light to exercise due care to avoid hitting such vehicles."

The word "vehicle" as used in this section, of course, has reference to horsedrawn or handpowered vehicles, and not motor vehicles.

█ Assignment of error No. XVI by Dr. Carne is leveled at the effort of counsel for Mrs. Spence to inject

into the evidence, by Dr. Carne, on cross-examination, the fact that he had been in several wrecks or collisions prior to this one and which evidence the Court held incompetent. This assignment of error is based upon the 26th ground for new trial as set out on pages 48 to 51 inclusive of the record and which evidence is also set out verbatum in this assignment. On cross-examination Dr. Carne was asked if he had "trouble with his back before this wreck." He stated that he had and was then asked when that occurred and if that injury was caused by a previous wreck he had. His answer was "No, sir." At that point counsel for Dr. Carne objected. The Court announced that he overruled the objection and then an argument took place between the Court and counsel for both parties as to what the witness had been asked. The Court, in the course of that argument admitted that he had misunderstood the question and said to counsel for Mrs. Spence, "But if you asked him if he received this injury from a former wreck that would be competent." At that point counsel for Mrs. Spence asked the question, "Now, Doctor, as a matter of fact you have had six wrecks in the past two and one-half years, haven't you?" No answer was made for there was an immediate objection and the Court responded with the statement, "Sustained." Thereupon counsel for Mrs. Spence asked the following question: "I asked you, as a matter of fact, if you haven't been involved in six wrecks in the past two and one-half years." No answer was given because objection was immediately made and the Court announced "Sustained." It was not proper for counsel for Mrs. Spence to ask such question, after the Court had sustained the objection, and while we disapprove of such action of learned counsel and consider it improper, it does not appear to have influenced the jurors in arriving

at their verdict. Argument of counsel immediately began and the Court announced "Let me let the jury step out." That was done. While the jury was out there was considerable argument between the counsel and the Court. The jury was returned and the Court said: "Gentlemen of the jury, before you went out there was a question asked if you had six other wrecks or some number of wrecks. That matter is withdrawn from your consideration." Counsel for Dr. Carne then said: "Ask them not to take that into consideration and tell them it is not proper to consider it." The Court then said to the jury "That's right. You shall not take that into consideration in determining the issues in this case." At that point counsel for Mrs. Spence then asked Dr. Carne, "State whether or not the injuries complained of in this case were caused or aggravated or affected by injuries received in other wrecks?" The answer was "No, sir." Counsel for Dr. Carne immediately objected and that objection was overruled. So the jury was permitted to consider only this last question and answer, under the instructions of the Court. Dr. Carne's answer was conclusive. Even though counsel for Mrs. Spence pressed their question too far, after the Court had sustained the objection, we must presume that the jurors followed the Court's instructions with respect to the incompetent questions and that they did not affect the verdict of the jurors. This assignment, therefore, must be overruled.

The orderly consideration of the case brings us now to the eighteenth assignment, leaving assignment XVII for our last consideration. This eighteenth assignment is leveled at the refusal of the Court to grant Dr. Carne a new trial on the grounds of newly discovered evidence. There are several reasons why this assignment must be

overruled. In the first place, the witness, one W. M. Ford, whose evidence is said to be discovered since the trial of the case, and before the action of the Court on the motion for new trial, testified on the hearing of the motion for new trial that he went to the scene of the collision before either car was moved and while Dr. Carne was still sitting in his car, being with some person whom he thought wanted to buy a new car, and for whom he was demonstrating the car that he had for sale. That this proposed customer was driving at the time and pulled over to the curb stopping two or three cars back from the involved intersection, from which point they walked up to where Dr. Carne was and the witness Ford then spoke to Dr. Carne. Apparently the occupants of Mrs. Spence's car had gone on to the hospital. This witness states that he observed the light signalling device over that intersection and that it appeared to be showing a green light east on McGaughey Street and north on King Street. He does not claim to know what color the light was either south on King or west on McGaughey. This witness further states that at that time other persons standing there made the remark that the light was showing green both directions. Dr. Carne lived there in Dyersburg and pursued his profession there. This witness Ford also lived there in Dyersburg and had been in the automobile business for a number of years. No effort was made to keep the conversation at that time a secret. People standing around must have heard it. He stated that he stood around there for some twenty minutes. Both attorneys for Dr. Carne filed affidavits in connection with their activities and the diligence asserted by them in an effort to discover all available evidence in behalf of their client. No criticism can be offered either of them, but it was Dr. Carne's duty to inform his attorneys with

respect to the presence of any persons who appeared at the scene of the accident, and the fact that he may have forgotten it or overlooked it furnishes no excuse. He is charged with diligence, as well as his counsel.

In the second place, the record reveals the fact that this accident occurred about three thirty in the afternoon, at a time when the apparent defect in the light may have been caused by the sun shining through the green lens. Also there is the testimony of the three occupants of the cars with respect to what happened as they approached the intersection and how the light was working at that time. Dr. Carne claiming that the only defect he saw was that when the amber light showed on McGaughey there was no light on King during those few seconds, and if the evidence had been introduced on the hearing of the cause it cannot be said that it would have affected the verdict of the jury. While there is no expert testimony with respect to the speed of Dr. Carne's car during the time it was skidding 33 feet it is evident that it had considerable force forward at the time it struck the car driven by Mrs. Spence. The photographic exhibits of the Spence car showing the crash impact on its left side indicates that the Oldsmobile was moving with considerable force at the moment of the impact. Then too, Dr. Carne admits that the two cars were travelling at about the same speed and that Mrs. Spence did not put on any brakes, and giving full faith to that statement as being the way he observed the situation, the physical fact that he skidded 33 feet and that Mrs. Spence made no baking effort to stop, and while he observed the streets were wet, the jury could have concluded that he was mistaken in his statement relative to his speed as well as the location of Mrs. Spence's car when he first saw it and the speed

she was making. His testimony does not impress us that he analyzed the situation correctly. It must, therefore, have so impressed the jury and trial court to a greater degree. For the reasons stated this assignment is overruled.

Assignment of error No. XVII, complaining that the judgments of the Court, both in favor of Joy Spence and Lawson Spence are excessive, even after the remittitur of $5,000 of the judgment in favor of Mrs. Spence.

This assignment and the assignments of error by Joy Spence relative to the remittitur, which was accepted under protest by her, will be discussed together.

Counsel for Mrs. Spence contend that the judgment remains excessive in her behalf because the injuries sustained, even if caused by the negligence of Dr. Carne do not justify a judgment in the amount of $10,000. They also contend that the record shows the fact that the Trial Judge was not satisfied or convinced, by the evidence with the judgment in the amount of $10,000.

As to the first proposition the injuries sustained by Mrs. Spence have already been minutely set out in this opinion. Generally the jury and the Trial Court are the best judges of the proper amount in such cases. The record does not indicate that Mrs. Spence has suffered any permanent injuries, other than the thought of having some silver wire or something of that kind imbedded in her cheekbone for the remainder of her life, unless removed by surgical process, but she evidently had a very painful injury and suffered considerably over a considerable period. The Trial Court, in his comment on the motion for new trial, and particularly that part of it going to the amount of the judgment had this to say:

"Only where it appears to the Court there might be some element in there (speaking of the verdict) that caused the jury to go beyond that which would be just and reasonable. Or, because of something upon the nature of the case that causes them to be persuaded from that which would be reasonable. Under those circumstances I think it becomes the duty of the Court to do that. I listened very carefully to the injuries that were related upon the witness stand here and the care given this lady was excellent and the medical treatment and her recovery and I was rather a little surprised when the jury brought in a verdict for fifteen thousand dollars ($15,000). I really thought a very ample verdict on her part would be ten thousand dollars ($10,000), and that's quite a liberal view at that. I am a little bit inclined to think that would be a little more than the amount of her injuries, but being persuaded by the jury verdict and not wanting to do an injustice either way, I feel there should be a remittitur of five thousand dollars ($5,000) in her case which would leave a verdict of ten thousand dollars ($10,000) in her case." In the order of the Court, making the remittitur and entering the judgment for $10,000 the Court said: "After considering said motion for new trial and hearing argument of counsel thereon, the matter was taken under advisement by the Court until September 28, 1953, at which time the Court was of the opinion that the judgment in favor of Joy Spence was so excessive as to evidence prejudice, passion or caprice upon the part of the jury," and entered his judgment in the aforesaid amount of $10,000. The Court did not express himself dissatisfied with the verdict of the jury upon any other ground than excessiveness. It is insisted that the case should be controlled by the opinions in McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S. W. (2d) 1020, 1023, which cites

the cases of State ex rel. Richardson v. Kenner, 172 Tenn. 34, 109 S. W. (2d) 95 and Telephone & Telegraph Co. v. Smithwick, 112 Tenn. 463, 79 S. W. 803.

We do not agree with counsel that the McLaughlin case governs the instant case. In that case the Court had tried consolidated cases in some of which the jury had rendered different verdicts based upon the negligence of the parties. The Court said, "Under assignment 4 it is insisted that the trial judge did not pass upon the evidence and approve the verdict of the jury. This assignment is based upon the following statement of the trial judge made at the time of overruling the motions for a new trial: 'In these cases where the evidence is in sharp conflict the Court does not feel that he has a right to interfere with the verdict of the jury, and overrules the motions.' " It is thus seen that the Court was not acting under the statute Code Section 8987, which gives him a right to order a remittitur, but was reaching his conclusions of the rights of the parties solely on the way that the jury decided the case. In the instant case the statement of the Court applies only to the excessive amount of the judgment, and in no wise indicates that the Court did not approve the verdict of the jury in favor of Mrs. Spence and the verdict in favor of Mr. Spence, thus finding Dr. Carne guilty of negligence.

This Court has not refused to make remittiturs in the amount of verdicts and judgment when it appeared that it should be done, but we do recognize the rule to be that this Court will give great weight and consideration to the action of the Trial Court in ordering a remittitur, and will not disturb the same unless there has been some abuse of the statutory discretionary authority.

· The reasons assigned for the rule is well·stated in Telephone & Telegraph Co. v. Smithwick, 112 Tenn. 463, 79 S. W. 803, which we approve, and even since that decision the statute with respect to remittiturs has been amended so as to authorize the courts to make remittiturs when the verdicts appear merely excessive, without finding that they were influenced by sympathy, passion or caprice. Sec. 8987 and 8988, 1950 Suppl. to Code of Tenn. Regardless of the remittitur made by the Trial Court, and his reasons therefor, and his statement referring to the influence upon him of the verdict which was reduced by 33 1/3%, and in view of the injuries to Mrs. Spence, the pain and suffering described by her we are not disposed to reduce that judgment further, but on the contrary approve the remittitur and the judgment, thus overruling this assignment of error by Dr. Carne. If the verdict was excessive, and we think it was, any error on that account was fully cured by the trial court's required remittitur. City Water Co. v. Butler, 36 Tenn. App. 55, 251 S. W. (2d) 433, 439; Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222; 15 Am. Jur. Sec. 205 pages 621-622.

It is obvious, from what has been said heretofore that we are going to overrule the assignments of error made by Mrs. Spence respecting such remittitur.

 This brings us to the question of whether or not there should be a remittitur of any portion of the $3,000 judgment in favor of Mr. Spence. We have examined this record many times and have examined every statement that has been made with respect to the expense incurred by Mr. Spence and the damage to his automobile. His damages, it appears to us, can be easily arrived at by

mathematical calculations. At R. page 95 he has set out nine items of expenses, for which he has filed receipts as exhibits. In addition to that he estimates $75 expenses necessary for Mrs. Spence to go to and from Memphis in connection with her medical treatment. These items total $990.71. At R. page 103 and 104 he estimates the expense of a nurse and taxi fare to be $100. At R. 116 he estimates the additional pay for a maid at $11 a week for two weeks, which would be $22. When we consider the proof in connection with the damage to his automobile, giving him advantage of the estimated difference between the value of his automobile prior to the wreck and after it, will be observed that the outside value, prior to the collision was $2,250, and that after the collision it was $1,000. Thus the automobile damage is $1,350. In making a recapitulation of each item we find the same to be as follows: To. Dr. Paul Baird $1,000; J. W. Curry, ambulance service $30; Baptist Hospital $125.71; Campbell's Clinic $172.50; Gertrude O'Kelly, Anesthetist $20; Campbell's Clinic, an additional account $7; Dr. W. E. Anderson $24; Dr. Adam's Clinic $350; Baird-Brewer Hospital $86.50; Trips to Memphis $75; Additional Expense nurse and taxi hire $100; Excessive cost of maid $22; Damage to automobile $1350. This makes a total of $2462.71. It is insisted that Mr. Spence is entitled to some additional amount for his work. We do not conceive that to be the rule. He itemized his own expenses, as set out above. He chose to stay at home and perform some of the duties that his wife had performed, which was an admirable personal choice on his part. He did not sue for loss of consortium of his wife, and we are constrained to hold that his entire loss, expense and damages to which he is entitled under the pleadings and the proof amount to the aforesaid total sum of $2,462.71, which

amount he was entitled to recover and no more. Therefore, as to the assignment of error by Dr. Carne that the judgment in favor of Mr. Spence is excessive that assignment is sustained to the extent of $537.29. The result, therefore, is that this Court finds that there should be a remittitur of the verdict and judgment against Dr. Carne and in favor of Mr. Spence to the amount of $537.29, and if accepted or made by Mr. Spence, judgment will be rendered in this Court in his favor and against Dr. Carne for the aforesaid sum of $2,462.71, and if the remittitur is not made the entire judgment will be set aside, reversed and his suit remanded to the Circuit Court of Dyer County, Tennessee for a new trial. Mr. Spence shall have the right to accept the remittitur under protest.

While we have held that it was error for the Court to instruct the jury in the language quoted in this opinion from the charge of the Court with respect to the negligence charged in Count 2 relative to the requirement that Dr. Carne, under the statutory provision, should have yielded the right-of-way to Mrs. Spence because of that provision of the statute directing the operator of a motor vehicle approaching or entering an intersection at approximately the same time that another entered the intersection on the right was required to yield, we are of the opinion that this error did not affect the verdict of the jury, taking in consideration the whole charge to the jury. There is nothing in the record that indicates that we could affirmatively find such to be the facts. Thus the judgments will not be reversed on that account. If such an error affected the entire second count, which we do not hold that it does, the third count of the declaration, charging a violation of the traffic ordinance of the city of Dyersburg could not be affected by that error. And so

where the verdicts are general, as in this case, the rule applied under Sec. 8824 of the Code of Tennessee 1932, and the decision of our Court and the Supreme Court based upon that section, together with the provisions of Sec. 10654 of said Code both require that the judgments be affirmed, to the extent as set out in this opinion and in accord with the remittitur suggested in respect of the judgment for Mr. Spence.

In closing this opinion we would like to comment that an examination of the relationship of traffic signals to the movement of traffic, and the provisions of statutes and ordinances, referred to as "controlling traffic" are but erroneous expressions. No law, ordinances or traffic signal yet devised can "control" traffic. Only the individuals who travel on their feet, sit at the steering wheel or hold the reins can "control" traffic. The laws, the ordinances and the traffic signals are but instrumentalities to direct traffic. Therefore, the lighting devices erected along the streets and at intersections afford directions to those persons who are about to pass through such intersections against being negligent in their movements or vice versa being careful in their movements.

All assignments of error by Dr. Carne, except as otherwise expressly stated in this opinion and the assignments of Mrs. Spence as to the remittitur of the judgment in her favor are overruled. All assignments of error by Dr. Carne respecting the judgment of Mrs. Spence are overruled, subject to the acceptance of Mr. Spence of the remittitur herein ordered, and if such acceptance by Mr. Spence is not made the assignment of error of Dr. Carne as to the excessiveness of the judgment in favor of Mr. Spence will be sustained, in which event the case of Mr.

Spence v. Dr. Carne including the counter-claim will be remanded for a new trial.

Judgments will therefore be entered, in accord with this opinion affirming the $10,000 judgment in favor of Mrs. Spence and ordering the suggested remittitur respecting the judgment of Mr. Spence. The cost in the cases in this Court, including the cost of the transcript of the record and of the bill of exceptions will be paid one-half by Mrs. Spence and Mr. Spence and one-half by Dr. Carne. Judgment will be entered accordingly.

Carney and Bejach, JJ., concur.