Glidewell *v.* The State.

LEWIS GLIDEWELL *v.* THE STATE.

1. CRIMINAL LAW. *Jury. Verdict. Not gambling. When.* Where a jury added together the number of years which each thought the prisoner should be confined in the penitentiary, and divided the aggregate by twelve, and the result was agreed upon and returned by the jury, the verdict was not a gambling verdict, there being no agreement or understanding, expressed or implied, before the aggregation and division, that the result should be their verdict. It is the fact of an agreement or understanding before the result is adopted that vitiates the verdict.

2. SAME. *New trial. Affidavit. Personal examination.* The court may order a party who has made an affidavit in support of a motion for a new trial, before the court, to be personally examined with respect to the statements in his affidavit.

FROM MADISON.

Appeal in error from the Common Law Court of Madison county. T. C. MUSE, J.

W. W. WILLIAMS for Glidewell.

ATTORNEY-GENERAL LEA for the State.

WILSON, Sp. J., delivered the opinion of the court.

The prisoner was convicted in the common law court of Madison county of the crime of malicious burning, and sentenced to the penitentiary for three years. His motion for a new trial and in arrest of judgment was overruled, and he has appealed to this court.

The indictment is jointly against him and one Robert Meriwether, but there was a severance in the court below, and his case is alone before us.

The indictment contains two counts. . The first charges· that the prisoner and Meriwether, on February 1, 1884, in the county of Madison, "unlawfully, feloniously, wilfully and maliciously did set fire to a building containing valuable property, viz: a crib with corn and sorghum therein, the property of F. A. Weatherby," etc. The second, that the said parties on the day and year aforesaid "did wilfully and maliciously burn a barn, the property," etc. No objection was made to the indictment before verdict. After verdict it appears that the prisoner moved for a new trial and "arrest of the verdict," because he was "indicted for arson, and for said offense was convicted and time fixed for three years in State prison, which punishment is lower than allowed by statute, and other causes to be heard on the trial of this motion." It seems that the clerk did enter the return of the jury as a "verdict of guilty of arson," and the judgment of the court was rendered accordingly, the jury having been discharged, as, it appears, over the objection of the prisoner. But in point of fact the jury returned a verdict of "guilty as charged in the indictment;" and upon motion of the attorney-general, the court vacated the judgment based upon the entry of the verdict made by the clerk, had the verdict of the jury as actually returned entered and rendered the proper judgment thereon.

These steps were taken in the presence of the prisoner, and over his objection, and they constitute the first error urged in his behalf.

There is no ground to doubt from this record that

the jury did in point of fact return the verdict finally acted upon by the court, and we see no reason or principle of law that forbids a court, in criminal trials, from correcting the clerical errors or misprisions of its clerk during the term, so as to make its record speak the truth. To say that it cannot, is to establish a rule that would enable a careless, negligent and designing clerk, in many cases, to falsify the truth and defeat the ends of justice.

We will uphold all technical rules that subserve the honest end of protecting the just rights of prisoners to a fair and impartial trial under the Constitution and the law. We will not enforce trivial ones, not the mandate of the Constitution or of the statutes, which are of use, and can be of use alone to enable the guilty to escape, or to delay the sentence of just punishment.

A question is made here in argument, but not raised by objection of record, that the first count in the indictment is defective. as a count for arson, because it alleges simply that the prisoner "set fire to" the property, and fails to allege that the property was burned. In addition to the objection being *dehors* the record, it is irrelevant, because it is not a count for arson, but is obviously based on section 5431 (M. & V. Rev.), and follows its language. This is sufficient.

The next contention is that the verdict should have been set aside, and a new trial granted, because, as is shown by the affidavits of two of the jurors, the jury, in considering of their verdict, differed among themselves

as to the time the prisoner should be imprisoned, and therefore it was agreed among them that each juryman should set down the time he was for, and the product of the aggregate divided by twelve was to be accepted and returned as the verdict of the jury, which was done. If the facts were this way, they would clearly, under our authorities, vitiate the verdict, and it should be set aside.

But upon a careful examination of the record, we find the facts to be otherwise, even as detailed by the jurors who give their affidavits. Each juror, it seems, did set down or announce the time or number of years he thought the prisoner ought to be confined, and the result of this aggregate divided by twelve was the verdict agreed upon and returned by the jury. But there was no agreement or understanding, expressed or implied, tacit or otherwise, before this aggregation and division were made, that the result should be their verdict; nor was it in any way to bind the assent or influence the judgment of the individual members of the jury.

And it is the fact of an agreement or understanding, before this method of reaching a result is adopted, or while it is in process of execution, to be bound by its result, and to accept it, that vitiates the verdict. If this be the true test, much less should we be inclined to set aside a verdict, in the absence of an agreement or understanding beforehand to be bound by the result reached under this method, when we can see that the method and its result were not even used as an argument with any member of the jury

to secure his acquiescence in the result. No authority we have been able to find, certainly none in this State, holds that a verdict is vitiated simply because the jury put down the time each was for confining the prisoner on trial before them, added all of them together, divided the total by twelve, and adopted, after consultation and agreement, the product as their verdict, when there was no agreement or understanding beforehand to do so, and when the method adopted and its result were not used as an argument to influence an unwilling or hesitant member to acquiesce in it. This is the category in which we find this case.

William Glidewell, a brother of the accused, was a witness for the State in the case below. His evidence, in connection with other circumstances proved, was fatally strong against the prisoner. He testified in chief that some five or six months before the burning, his brother, Meriwether and himself had a consultation, in which his brother and Meriwether "said Mr. Weatherby had not paid them, and they were going to have their pay, and the first Saturday night in April was agreed on to meet at Lewis' house to go over to Mr. Weatherby's and have their pay by burning him out." The barn and property in it, some eighty barrels of corn and some fifty or sixty gallons of sorghum, were burned on this night. He further testifies "that the prosecutor offered him fifteen dollars to say that he saw Bob and Lewis set fire to the barn, but did not offer him any thing to give the testimony he had, and that he gave the

same before the committing court without any induce-
ment or offer from prosecutor or any one."

The prisoner excepted to the testimony of this
witness, "because he was an accomplice, and because
he was hired." Its admission is assigned as error.
We see nothing in the evidence in this record to fix
the character of an accomplice upon the witness. The
most that can be made out of it in this direction,
even inferentially, taking it all to be true, is that
he contemplated being one, but backed out of the
enterprise before its actual consummation was under-
taken. But even if he were an accomplice, we know
of no rule of evidence that would exclude his testi-
mony on that ground; and as to his being hired to
testify at that time he, in his evidence thus given,
relieves it of its purchasable taint, if he is to be
believed in what he then said.

But the prisoner presents the affidavit of this same
William Glidewell in support of his motion for a
new trial. In it he swears that the testimony given
by him against the prisoner before the jury on the
trial of the case, to the effect that the prisoner and
Meriwether made an agreement to burn the barn of
Weatherby, as declared in the indictment, was wholly
untrue; that no such agreement was ever made: that
the prosecutor offered him $15 to testify against pris-
oner in this cause; that he paid him $2 in cash for
that purpose a day or so after the trial before the
justice of the peace, and that he was a witness against
the prisoner because he was paid to be one.

The court, upon the motion of the attorney-general,

"ruled that the prisoner produce William Glidewell, who is now in easy reach at county jail, in aid of his affidavit," which, as the record recites, he refused to do. It seems that the court did not enforce its rule to this effect, nor did the State's officer take any steps to have him orally or otherwise questioned as to the statements made in his affidavit, and how he came to give it. If it was desirable to have him before the court to ascertain the truth or falsehood of the statements made in his affidavit, or to show, if possible, that his affidavit was "cooked" for the occasion, then the court should have enforced its rule upon the prisoner or his counsel to produce him, or, what was a more direct way to get at the end sought, directed the attorney-general to take out the proper process, and bring him before the court.

There is nothing in the contention of the learned counsel for prisoner that a trial judge has no right or warrant to bring a party who has made an affidavit in support of a motion for a new trial in a criminal case, before the court, to be personally examined therein with respect to the statements made in his affidavit. Courts are created and judges elected to preside over them, in order to ascertain the truth and the right in controversies therein pending, and to administer justice as the same may appear to be adjudged by the law. To this end they have the right to the use of all legitimate sources of evidence calculated to elicit the truth. And to hold that a trial judge, in criminal cases, had no power to bring parties, who make *ex parte* affidavits vitally affecting

the cause of justice in his court, before him for examination with respect to the statements made by them in such affidavits would be, in many instances, to make him a silent witness of fraud, and the unwilling official promoter of its purposes.

But, however much the affidavit of this witness may smack of suspicion, we cannot ignore it in this record, when we take it in connection with the statement given in his testimony before the jury, in respect to the offer of the prosecutor to pay him fifteen dollars to swear that he saw the prisoner and Meriwether set fire to the barn, when the State takes no step to bring him into open court to be examined in regard to the statements made in his affidavit, when the prosecutor himself, a witness in the case, nowhere and in no way in the record pretends to a denial of the serious inculpatory matter alleged against him by this witness, and when, as is obvious, the testimony given by this witness, afterwards in this affidavit stated by him to have been absolutely and wholly false, and to have been purchased by the prosecutor, carried heavy weight and pointed significance with the jury. While the truth may have been reached by the jury in the cloud of uncertainty and unreliability investing and infesting the testimony of this main witness for the State, as evidenced by this record, the only safe course for us is to award the prisoner a new trial.

The judgment of the court below is therefore reversed, and the cause will be remanded for a new trial.