MAYOR AND ALDERMEN OF TOWN OF MORRIS-
TOWN, Plaintiff in Error, v. ALMA JUNE PAINTER
INMAN, Defendant in Error. —342 S. W. (2d) 71.

Eastern Section. May 5, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

686

S. J. Anderson, Paul R. Capps, Morristown, for plaintiff in error.

Taylor & Inman, Morristown, for defendant in error.

LANDON H. GAMMON, Special Judge. This is an action brought under the Wrongful Death Statute (T. C. A. sec. 20-607) by Alma June Painter Inman, as the surviving widow of Lewis Edward Inman, deceased, seeking to recover damages from the Town of Morristown for the death of her husband. The plaintiff widow was awarded a jury verdict upon which the court rendered judgment in the amount of $10,000. The Town's motion for new trial was overruled by the Circuit Court and it has appealed in error to this court.

The death was caused by the collision of two automobiles at nighttime on a public street in Morristown. The deceased was operating one of the automobiles, a 1950

model Ford. Jimmy Blount, a police officer of the defendant town, was operating the other, a 1959 Chevrolet owned by the Town and equipped and used as a police cruiser. It is not disputed that the police officer was at the time and place acting as the agent or employee of the Town and within the scope of his authority as such.

The widow charges that the Town was guilty of common-law negligence causing the death, in that defendant's agent (1) was operating the police cruiser at a high, dangerous and reckless rate of speed; (2) drove the police cruiser to the left of the centerline of the street; and (3) operated the police cruiser without lights.

It is further charged that the Town was guilty of common-law negligence in knowingly allowing and permitting an inexperienced, young, reckless, childish and immature driver to operate its police cruiser and in selecting such a person as one of its police officers.

The widow further charges that the Town's police officer was guilty of violating the statutory Rules of the Road in driving on the left side of the street and in driving in wanton and willful disregard for the safety of others on the highway.

It is further charged by the widow that the police officer was operating the Town's police cruiser in excess of thirty miles per hour in violation of an ordinance of the Town of Morristown.

The Town's defense is a denial of the charges of negligence and the further defense that the deceased's negligence contributed to and proximately caused his own death.

The sequence of events leading up to the death commenced at about five minutes to one on the morning of May 9, 1959. The police officer was then seated in the cruiser while parked on a public street when he observed the Inman automobile run a red light at a street intersection while proceeding on the left side of the street at a speed of from thirty to thirty-five miles per hour.

The police officer immediately turned on the lights of the cruiser and started in pursuit of the offending vehicle. At that moment he recognized it as the Inman car but not until later did he learn it was being operated by Inman. Both cars picked up speed and as the pursuit took place over the streets of Morristown, the two vehicles at times attained a speed of from fifty to sixty miles per hour.

During the pursuit the police officer flashed the spotlight of the cruiser across the pursued vehicle some ten or fifteen times but this failed to bring the deceased to a stop. The police officer did not sound the siren or the horn of the cruiser during the pursuit.

When the pursuit had continued for about a mile or more along the streets, the deceased pulled his vehicle off the traveled portion of the highway to his right and into a filling station area, circled around the gasoline pumps and re-entered the street in front of the approaching police cruiser. At that instant the collision occurred when the front of the cruiser struck the left side of the deceased's car broadside about midway at the driver's seat. Both vehicles were crushed in at the places of impact. Death resulted almost immediately to Inman.

The cruiser which police officer Blount was operating came within the definition of an ''authorized emergency vehicle'' of T. C. A. sec. 59-808. The driver was in

pursuit of an actual or suspected violator of the law. He was therefore privileged and it was his duty, if necessary, to exceed the speed limits but only "so long as he [did] not endanger life or property." Furthermore, the exemption so conferred by T. C. A. sec. 59-808 applies "only when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state."

It is shown that the police cruiser was equipped with a siren, which is a requirement under T. C. A. sec. 59-901 (b). The police officer failed to sound this siren.

In order for the emergency vehicle to be exempt from the rules governing other vehicles, the driver thereof must make use of audible *and* visual signals and the flashing of his searchlight alone was insufficient to apply the exemption to this vehicle.

Under the facts shown in evidence the police officer was subject to all the Rules of the Road and common-law duties to which an ordinary motorist is subject.

The trial judge therefore correctly submitted to the jury the disputed issues of fact as to whether the police officer was violating the common-law and statutory Rules of the Road as to excessive speed, driving on the left of the highway and driving in wanton and willful disregard for the safety of others.

The instructions of the court on the issue of whether the police officer violated the ordinance of the Town setting a maximum speed of thirty miles per hour were likewise proper and correct.

The assignments of error now made are largely directed to the charge of the court to the jury and therefore we are

considering the charge as a whole in order to pass upon the sufficiency and legal correctness of the instructions complained of.

The first assignment complains of instructions submitting to the jury the issue of whether or not the Town knowingly allowed its cruiser to be operated by an inexperienced, young, reckless, childish and immature driver and in knowingly selecting as one of its police officers, a young, inexperienced, reckless, childish and immature person.

■ The issues of negligence raised by the pleadings were properly submitted to the jury insofar as they were based on evidence received in proof. But there was no evidence introduced to the effect that police officer Blount was inexperienced, young, reckless, childish or immature or to the effect that the Town knowingly selected such an unqualified person as one of its police officers.

The only evidence on this subject was that he was twenty-two years of age, had had approximately seventeen months experience as a police officer and had had previous experience as a military policeman for about two and one-half years.

■ The instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous. Goodall v. Thurman, 38 Tenn. 209. East Tenn. V. & G. R. Co. v. Toppins, 78 Tenn. 58. Three States Lumber Co. v. Blanks, 118 Tenn. 627, 102 S. W. 79. Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219.

692

■ This assignment is sustained for the further reason that the choosing of agents for the enforcement of its public laws is a governmental function and a municipality cannot be held liable for negligence about such matters. Combs v. City of Elizabethton, 161 Tenn. 363, 31 S. W. (2d) 691.

■■ The waiver of sovereign immunity incident to a municipality carrying liability insurance on its motor vehicles is only a waiver pro tanto. The Town carried such insurance on its police cruiser but this was not consent to being sued for the exercise of any other governmental function, such as choosing its police officers.

■ The third assignment of error is directed to the judge charging the jury as follows:

"Gentlemen of the jury, I instruct you that an officer of the law in making an arrest for a misdemeanor has no right whatsoever to do any violence to the person. In other words, the law presumes that it is better for a person who has committed a trivial offense, such as a misdemeanor, to flee and get on out, rather than to permit the officer to shoot him or do him any violence, and I charge you that if, under the circumstances of this case it is a question for your determination whether or not this officer exercised the care, the necessary care and caution that an ordinary prudent person would exercise under the same circumstances in chasing the plaintiff's husband, so that is a question for you to determine."

The fourth assignment will be considered at the same time. It is directed to the following instructions:

"I further charge you that our Supreme Court has held that except in self-defense an officer is never warranted in law in shooting at one who is guilty of a misdemeanor, either for the purpose of the original arrest of such person, or for the purpose of recapturing after he has escaped from arrest. An intoxicated man who struck special police officer who was attempting to arrest him when he commenced cursing and using vile language was guilty of only a misdemeanor and when he fled the officer had no right either to shoot him or to shoot at him so as to endanger his life. That is what the Court has meant by telling you, Gentlemen of the jury, that a police officer, sheriff, or no deputy sheriff, or constable, has a right to do violence to a man who has committed a misdemeanor if he flees, in the act of recapturing him, or taking him. It is better to let a man who has committed a minor offense like that escape than it is to do him bodily harm, resulting in bodily harm or death."

The pleadings make no charge that police officer Blount shot or threatened to shoot at the deceased. There was no evidence that the police officer did in fact shoot at the deceased or threatened or impliedly threatened to shoot at him. The instructions complained of have no pertinent or relevance either to the pleadings or to the evidence.

These instructions are subject to the same objections as the instructions set out in the first assignment and for the same reasons and upon the same authorities previously there set forth. In fact they are all the more objectionable because they are not related to any allegation of the pleadings.

The instructions assume that there is evidence tending to prove certain facts when there is no such evidence. While they are correct statements of the law in a case where there is a shooting of firearms in a murder or an attempted murder, or an assault and battery, they have no place in this case, which involves the issue of negligent operation of a motor vehicle.

It affirmatively appears that these instructions are misleading to the jurors, giving, as they do, great weight to the charge of the court; are prejudicial to the defendant; and affected the results of the trial. The third and fourth assignments of error are therefore sustained.

The second assignment that the judge's charge as a whole is inflammatory and prejudicial to the defendant is too general and without merit. It is therefore overruled.

The fifth, sixth and seventh assignments charge error in failing to instruct the jury upon certain matters of law. No request was made to submit any of these matters to the jury. If the trial judge fails to submit the theory of a party's case to the jury, it is that litigant's duty to request him to do so. Mere omission in the court's charge is not error in a civil case where there is no request for proper and accurate instructions.

The eighth assignment complains that the jury's verdict is a gambling verdict. There was no antecedent agreement by the members of the jury to abide by the results of averaging the figures of the twelve jurors. If there is such an antecedent agreement, the verdict rendered thereon is a quotient or gambling verdict and is vitiated thereby. Our courts do not approve of such verdicts and trial judges usually caution the juries

against using such a method. But if there is no antecedent agreement, express or implied, to abide by the result, the fact that the jury subsequently agreed upon a quotient verdict will not vitiate the verdict. Glidewell v. State, 83 Tenn. 133; Knoxville Rwy. & Light Co. v. Rogers, 5 Tenn. 218; Olins v. Schocket, 31 Tenn. App. 346, 215 S. W. (2d) 18.

The judgment of the Circuit Court is reversed and the case is remanded for a new trial.

McAmis, P. J., concurs.

Hale, J., not participating.