# JAME EDWARD LOWE, By next friend, v. ERNEST A. IRVIN.

# FRED J. LOWE v. ERNEST A. IRVIN.—373 S. W. (2d) 623.

Eastern Section, Knoxville. March 19, 1963.

Certiorari Denied by Supreme Court June 4, 1963.

D. H. Rosier, Jr., D. K. Thomas, Maryville, for plaintiff in error.

Goddard & Gamble, Maryville, for defendant. in error.

AVERY, (P.J.,W.S.). These cases are here on appeal in error from the Court below by plaintiffs-in-error complaining of the action of the trial court in directing verdicts in favor of defendant-in-error Irvin, at the conclusion of plaintiff's proof. There were two cases, as shown above, wherein James Edward Lowe, a minor, brought suit by next friend for personal injury damages, and the other by his father, Fred J. Lowe, for medical expenses resulting from injuries to his son.

Since there are two cases, consolidated and tried together, growing out of the same alleged careless action in the trial of which, at the conclusion of the evidence of the plaintiffs, the Court directed a verdict in each case favorable to defendant-in-error. Hereafter in this opinion we will let the word "plaintiff" refer to both

the son and the father, and the word "defendant" to Ernest A. Irvin. Where the father and son are referred to separately, it will be by their respective names or by the words "Son" or "Father".

Declarations in the two cases are identical except as relates to the damages sued for. Each declaration is in two counts, the first count alleging a common law violation and liability to plaintiffs, and the second count alleging liability because of violation of T.C.A. Section 59-858.

The injury resulted from a collision of an automobile driven by the defendant with a bicycle on which James Edward Lowe, a minor 9 years of age, was riding and approaching the Old Niles Ferry Road on which the defendant was traveling, and:

"* * * was then within the clear and open view of the defendant had he been properly observant, but notwithstanding the presence of the plaintiff's son approaching said intersection, the defendant, at an excessive speed under the circumstances, without keeping a proper lookout ahead, without keeping his vehicle under proper control, without seeing what he should and would have seen by the exercise of due care and in wanton disregard of the presence of the plaintiff's son did operate his automobile into the intersection of said roadway and the Old Niles Ferry Road and at a time when the plaintiff's son had operated his bicycle into the intersection, whereupon the automobile and the bicycle collided with great force and violence, throwing the plaintiff's son to the ground and injuring him as hereinafter set out."

Following that statement the injuries of the young man are fully described, which are rather serious injuries, but from our view of the case and proper disposition of same, needs no further or other reference thereto in this opinion.

In the second count it is charged that the defendant operated his automobile in violation of T.C.A. "Title 59—Section 858, Reckless Driving: (a) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

This count clearly charges defendant with reckless driving in violation of the quoted section of the Code. The damages laid in the declaration of the minor is $25,000 and in the declaration of his father is $5,000.

There was first filed a plea by the defendant, which is a specific plea, having been filed under the orders of the Court before any general issue plea was filed, and in this plea it is admitted that the collision between the automobile and this bicycle resulted in the injury of the minor defendant. It specifically avers that the accident occurred not at an intersection of ways, but that the plaintiff was riding out of a private driveway into said highway or Old Niles Ferry Road, and that this collision occurred in that sort of an intersection. It denies that defendant had a clear view of traffic approaching from that private drive, but avers that the view from the direction the defendant approached the place where the collision occurred was hidden by a bank and growth along the road and in the field adjacent thereto.

It is admitted that this private drive from which the plaintiff came into the highway was on defendant's left;

excessive speed is denied; speed in violation of the law is denied; the charge that defendant was not keeping a lookout ahead is denied, and the charge that he did not have his car under proper control is denied and there are specific allegations that he violated none of these common law negligent averments and then it affirmatively asserts that the minor rode his bicycle out of said private driveway without stopping or looking, and operated said bicycle into the side of defendant's car and that there could be no avoidance of the bicycle hitting the car of the defendant.

As to the second count defendant denies that he violated any part of T.C.A. Section 59-858 or any other statutes of the State of Tennessee, and there is a further plea to both first and second counts to the effect:

"1. That any injuries which the plaintiff's son sustained were not as a result of any negligence of the defendant whatsoever," in that he rode his bicycle, "out from a private driveway and into defendant's left side without stopping, without looking or without seeing that he could do so in safety,"

and that the way and manner in which the minor operated his bicycle was the proximate cause of his injury.

The plea then avers that if the Court should hold that the accident occurred at an intersection, defendant pleads the violation of T.C.A. 59-828 subdivision (a) to the effect that a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway, and:

"(b) When two (2) vehicles enter an intersection from different highways at approximately the same

time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.''

Defendant also alleges that the plaintiff's son was guilty of violating T.C.A. Section 59-831 which provides that:

''The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway.''

It also avers that the minor violated T.C.A. Section 59-873 which provides:

''Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by chapters 8 and 10 of this title, except as to special regulations in secs. 59-872—59-878 and except as to those provisions of chapters 8 and 10 of this title which by their nature can have no application.''

This case was heard on the briefs before the Judges of the Western Section of the Court of Appeals, sitting at Knoxville, Tennessee, in the Eastern Section on December 4, 1962, taken under advisement, and is now disposed of by this opinion.

The only assignment of error is as follows:

''1. That the Trial Court erred, to the prejudice of the plaintiffs, in directing the jury at the close of the plaintiffs' proof to render a verdict in favor of the defendant.''

Plaintiff's proof is very short and somewhat simple, and the substance of which is that the father of the minor

was mowing the back lawn at his home, and that something was wrong with the lawnmower and the father instructed the son to go over across this road where the collision occurred, and get a wrench from the garage at Mr. Bryant's home. The boy got on his bicycle and proceeded as he had been directed, the father did not see him any more until after the collision. As the father was there in the back yard, having stopped the lawnmower, and was pulling some weeds, awaiting the return of his son with the wrench, he heard his wife, the mother of this boy holler from the front of the house, and at about the same time he heard what he referred to as a "bump of the car and the bicycle". He ran around the house to the front and out into this "Old Niles Ferry Road" where he saw the little boy, the bicycle and the car driven by defendant. The defendant was getting out of the car and he was asked and answered as follows:

"Q—What part of the road was he lying in, Mr. Lowe?

"A—At the edge of the road.

"Q—Was he lying on the edge next to your house or on the edge over toward the Bryant place?

"A—Over toward the Bryant place.

"Q—At the edge of the pavement?

"A—Yeah.

"Q—Where was he lying relative to the Bryant driveway?

"A—On this side of it.

"Q—Where was he relative to the driveway; was he in the drive or below it or on this side or where?

"A—On this side of it.

"Q—And at the edge of the pavement, I believe you say, toward the Bryant house?

"A—Yes, sir."

He then described the injuries of the little boy, how he carried him to the hospital etc. This witness stated he had been living there on that farm for four years and that he was familiar with the condition of the fields across the road from his house. He said he had a conversation with Mr. Irvin at the hospital, and he was asked:

"Q—Did you talk to Mr. Irvin there at the scene or at any other place about this accident?

"A—At the hospital.

"Q—What did he say to you about what had happened there?

"A—He said he didn't see the boy until they had done hit.

"Q—Said he didn't see him until they had done hit; is that right?

"A—That's right."

He then identified a picture of the road, driveway and the entrance of the driveway into the road in question. He was asked and answered:

"Q—I notice there are two—what is that there on the sides of the drive?

"A—Brick columns.

"Q—And as you look into the picture, the Bryant driveway is on the left and your yard is on the right; is that right?

"A—Yeah.

"Q—Do you remember the day that we made this picture down there, Mr. Lowe? Do you remember when the photographer and I were down and made the picture? If you don't remember the date, do you remember the occasion? Do you have a note you made on it there?

"A—Yeah.

"Q—Well, can you get it and refresh your memory. What was the date?

"A—June 30th, '61.

"Q—June 30th? And I see a figure back here in this driveway. What is that there?

"A—That's Jimmy and his bicycle.

"Q—Did he go out there at my request with that bicycle that day?

"A—Yes, he did."

The witness then permitted counsel to indicate the point he was talking about with a black arrow on that photograph, and then he was asked:

"Q—* * * Now, at my request did you step the distance from the left edge of the Niles Ferry (meaning road), as you go into the picture, back to where the boy was setting on the bicycle?

"A—Yeah.

"Q—And what was that distance that he was back from the—

"A (Interrupting) Twenty-one steps." That would be 63 feet according to what he said with respect to the length of his steps."

This witness identified the alfalfa field that is shown on the Bryant side of the highway or road and said that it was higher when the picture was made than it was when the accident occurred, and that it had been mowed about a week before the accident. He further identified the entrance of the driveway into the Bryant lawn by having it marked with a red arrow and the place where the child with the bicycle lay at the time he came out to the highway or road immediately after the collision, with a black circle around a red dot. He further stated that defendant's car was headed away from Maryville at the time he went out there immediately when the accident occurred.

The witness then testified about the expense incident to the treatment of the child, procuring new glasses, damage to bicycle etc.

At the time that this case was tried this minor plaintiff was 11 years of age. At the time of the accident he was only nine years of age. His testimony clearly shows that due to the concussion resulting from his injury his memory was affected, and he does not remember going after the wrench, nor being told by his father to go after the wrench, nor anything that happened at or about or near the time of the accident. While he answered the questions asked him, that were within his memory, in a reasonably intelligent way, being questioned some by the Court, and there is a considerable narrative by the Court

to the jury explaining why he is directing a verdict, in which he quoted from Corpus Juris and other legal documents, including our Statutes, at no time did the Court seem to recall that in Tennessee a child at that age is not presumed to be guilty of any negligence, nor to exercise the care required of an adult, nor the relative difference in the operation of a bicycle and a motor vehicle.

So coupled with the fact that the child is only nine years of age and that due to his injury he could remember nothing about the accident, makes this young child so badly hurt, practically incapable of being guilty of negligence under the common law count of the declaration, even if it could be said, which we do not so construe the Act to mean, that it was negligence per se for him to ride his bicycle out of the driveway into this particular road, for if the defendant did not see the child until the bicycle and automobile came together, the jury could have well found that he was not looking ahead nor seeing that which he could see or should have been.

There is another feature of this evidence which is indicated by the proof from the picture exhibited and the related circumstances, that is with respect to the part of the automobile which came in contact with the bicycle, and the distance from which the child could have been seen as he came down the roadway or driveway to the road for a distance of 63 feet. The picture was made with the camera setting 112 feet east of the driveway, and it is clear from this picture view that the driver of the automobile, defendant, could have seen this boy on the bicycle at a distance of at least 112 feet from or before he reached where the driveway came out into the public road. Furthermore, it is shown by the proof that the

bicycle struck the front fender or hub on the left side of the automobile. Now if that is true, and there is no denial of that statement, which has been shown by cross examination as well as on direct examination of witnesses, the boy came down the driveway and across one-half of the highway before he struck the car. In other words, while this boy was coming on the bicycle for 63 feet down the driveway and across one half of the main roadway the defendant had him in plain view while defendant traveled a distance of 112 feet before the collision. It is but fair to say that a jury from these distances shown in the record, the view as shown by the picture, and the fact that the automobile was hit on the left front fender, or near that particular point, either the automobile was on the left side of that highway at or near the very entrance of the driveway to the highway, or if he were over on the right hand side of the highway, then the collision knocked this young man and his bicycle back clear to the edge of the entrance from the driveway into the highway. Since it is shown in the record that he traveled some 99 feet after the collision before stopping and at that time he was in his right lane, the direction he was going, and had all but the rear end of the car off the highway, it could well be presumed that if he was over on his right-hand side of this highway or public road, and driving faster than he should have, for evidently he had to make some application of his brakes in order to stop. If he were not, then he was on the wrong side of the highway, and it was a jury question whether he should have seen this child in time to have avoided the collision or have stopped his automobile, regardless of which side of road he was traveling on as he approached the driveway.

■ Furthermore, the father stated absolutely that defendant told him he didn't see the boy at all until the collision occurred. Putting that all together with the physical facts as shown by the picture and the proof, certainly minds of reasonable men might differ as to the proximate cause of the collision which produced the injury.

■ In giving consideration to the assignment of error in this case it was the duty of the Trial Court, and it is the duty of this Court, to examine the whole record and the rule of law governing the inferences to be drawn therefrom as stated in many of our cases. In Spence v. Carne, 40 Tenn. App. 580, 590, 292 S. W. (2d) 438, 442, the rule is restated, as had been announced in some of the cases supporting same, as follows:

"Upon the motion for directed verdict, and in the examination of the record to determine if there is any evidence to support a verdict it is our duty to consider only the facts proven in support of the party against whom such contention is made, and all reasonable inferences to be drawn therefrom, disregarding all countervailing evidence, and if there is any competent evidence about which the minds of reasonable men could disagree, it is proper to over-rule such assignments of error. It is only necessary to refer to the cases of D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613 and Monday v. Millsaps, 37 Tenn. App. 371, 264 S. W .(2d) 6, 14; McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 360; Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931."

There are many later decisions restating the rule which are not necessary to refer to. The learned Trial Judge in directing his verdict, stated the law he applied to this case as found in Vol. 5-A Am. Jur., at page 414, quoting as follows:

"The operator of an automobile traveling upon a public highway is under no duty to anticipate that the driver of another automobile entering the highway from a private road or drive will fail to yield the right of way to all vehicles on the public highway as required by statute, and, in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption, even to the last moment, that the driver of the automobile so entering the public highway from a private road or drive will, in obedience to the statute, yield the right of way."

Following the above quotation he quoted 59-873, T. C. A. to the effect that the traffic law applying to persons riding bicycles upon a roadway was the same as if they were driving an automobile except certain exclusions "which by their nature can have no application." We are quite sure that Judge Oliver realized in his quotation from Am. Jur. that the authority for the text-writer's quotation was Garner v. Pittman, a North Carolina case reported in Southeastern Reporter, 2nd series 75 at page 111, and which case involved two automobiles, one coming out of a driveway, the other moving along the highway, but he failed to give the child advantage of the further rule stated in the same case and text as follows:

"Too, it is a rule of law even in the absence of statutory requirements, that the operator of a motor

vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highways. 5 Am. Jur., Automobiles, secs. 165, 166, 167;'' Garner v. Pittman, 237 N. C. 328, 75 S. E. (2d) 111, 116, 117.

■ Passing now to the duty of the driver of a vehicle, such as a bicycle entering from a private road into a highway. There was a similar statute in North Carolina to that of Tennessee. By Section 59-831, T. C. A. it is provided:

"The driver of a vehicle about to enter or cross a highway from a private road or ·driveway shall yield the right-of-way to all vehicles approaching on said highway.'"

That does not mean that every driver of a vehicle who comes out from the driveway into a highway — even though the Act provides that he shall yield the right-of-way, and gets struck by an automobile driven along said highway, can not recover for the injuries inflicted in such collision. If the party coming out of the driveway is violating the law, and the party driving the automobile along the highway is likewise violating the law, by not keeping a lookout ahead, or by not driving his car in a careful manner, or with wanton disregard for the children that may be in the driveways, and both violations occur at the time of the injury, this constitutes a jury question, and not one in which the Court should direct

a verdict, because even though both parties be violating the law, it is still a question for the jury to determine what the proximate cause of the collision resulting in the injury was, and the violation of which one constituted the proximate cause, applying the proper rule relating to contributory negligence of a remote nature:

"It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side. He is not required to turn his head at every private driveway as he passes upon a public thoroughfare, in anticipation that some person or loose horse will run out upon a city street. It is sufficient if the driver sees what falls within his side view of his lookout ahead."

The above is quoted from an opinion in the case of Harris v. Miller, 24 Tenn. App. 332, 144 S. W. (2d) 7. It is also quoted and approved in the case of Hadley v. Morris, et al., 35 Tenn. App. 534, 541, 249 S. W. (2d) 295.

The above quotations from the reported opinions are repeated in an unreported opinion in the case of Mrs. Lillie M. Ross and R. M. Ross v. Howard W. Law and Coca Cola Bottling Works, (1958) from the Circuit Court of Madison County. In this case, which came to the Court of Appeals for the Western Section of Tennessee, the proof is clear that the Ross car being driven by Mrs. Ross violated a city ordinance as well as a statute of the State of Tennessee, by driving into an intersection without stopping, marked by a stop signal. There was a large yellow board with the word "Stop" on it. The street into which she entered was a through street. The defendant, Howard W. Law, operating a Coca Cola Bottling Works

automobile on the through street collided in the intersection of the street into which Mrs. Ross had advanced without stopping. Mr. and Mrs. Ross were both injured. They recovered a verdict in the trial court. This division of the Court of Appeals set that verdict aside and reversed the judgment of the lower court upon the theory that had Mrs. Ross not entered the through street without stopping, the accident could not have occurred, and that her failure so to do was the proximate cause of the accident. The case was carried by certiorari to the Supreme Court and in this unreported opinion by Justice Tomlinson, upon the authority of the opinions in Hadley v. Morris, supra, and Harris v. Miller, supra, Justice Tomlinson said that the driver of the Ross car, while actionable per se, considered with the proof that the driver of the coca cola automobile was violating the speed law, made a jury question and that the judgment of the Court of Appeals was reversed and the verdict of the jury and judgment of the trial court sustained.

In Adams v. Brown, 37 Tenn. App. 258, 263, 262 S. W. (2d) 79, 81, the Court quoting from 38 Am. Jur. Negligence, Section 13, p. 898, said:

"An act of the plaintiff, although unlawful, does not place him outside the protection of the law as to an injury sustained by him through the negligence of another, unless the unlawful act has some causal connection with the injury. Accordingly, no exception to the rule that contributory. negligence must contribute proximately to the injury sustained by the plaintiff in order to constitute a defense in his action for negligence is made for the fact that the plaintiff's negligence consists in the violation of a statute or ordinance. Clearly, where the defendant was guilty

of violating a statute or ordinance at the time when he negligently injured the plaintiff who was then committing the same violation, there is no cause for the defendant to escape liability if the plaintiff's negligence was not a contributing cause of the injury * * *. If the injured person's violation of an ordinance did not directly contribute to the injury, his unlawful conduct is not a defense to his action, even if he would not have been injured if he had not violated the ordinance. The distinction is between that which directly and proximately produces or helps to produce a result as an efficient cause and that which is merely a necessary condition or attendant circumstance of it.''

In that case our Supreme Court had under consideration one automobile passing another at an intersection. The automobile being passed was turning to the left, thus it was obvious that the car turning to the left had violated the statute in failing to see that he could make that turn in safety, the car doing the passing was passing in an intersection. Following the last above quotation the Court then quoted the rule as stated in Standridge v. Godsey, 189 Tenn. 522, 532, 226 S. W. (2d) 277, 281, as follows:

''If we should concede that the deceased was violating the law of the road, which is negligence per se, there remains the question of whether or not his fault was the proximate cause of the accident. By the weight of authority the contributory negligence of the plaintiff in violating the law of the road, or municipal ordinances regulating traffic, is not a complete defense unless it contributes to the accident as the proximate cause. Whether or not his fault was

the proximate cause of the accident was for the jury. Vol. 1, p. 117 Foundations of Legal Liability (Street); Catron v. Birchfield, 159 Va. 60, 165 S.E. 499; Corcoran v. Pac. Auto Stages, 116 Cal. App. 35, 2 P. (2d) 225. We are constrained to hold that the trial judge was in error in directing a verdict for the defendant.''

The question raised in Adams v. Brown was that the Court should have directed a verdict, and our Supreme Court following the rule set forth in the above quotation and making reference to Holt v. Walsh, 180 Tenn. 307, 174 S. W. (2d) 657, and cases there cited, said there was no error in the refusal of the Court to direct a verdict.

Repetitious certainly,—but again we say that the jury may well have inferred from the proof introduced here that the defendant was not keeping a lookout ahead, not seeing what he should have seen, which was the boy coming down the driveway, and thus he was a violator of the law as was the child. That was a question for the jury to determine and then which violation constituted the proximate cause. Whether or not in other words, the causal connection of the boy on the bicycle or the man driving the car was the proximate cause of the collision and plaintiff's injury.

Turning to further proof in the case, in the testimony of Mrs. Lowe, it is shown that she was standing in the front door of her home and saw this particular accident. She saw the car coming, she saw the boy going, in other words she saw them meeting at this intersection.

On cross examination, while referring to a portion of her pretrial deposition, she was asked and answered as follows:

"Q—And you saw that car coming and you saw Jimmy coming, didn't you?

"A—Yes.

"Q—Now, then, how close to the entrance was it when you hollered at Jimmy?

"A—I don't know.

"Q—He didn't look to the right or to the left, did he?

"A—Not that I remember.

"Q—And you told us that in here, didn't you, that you didn't remember to the right or to the left?

"A—I think so.

"Q—And he didn't stop? He didn't stop at the entrance?

"A—No.

"Q—And you saw, I believe you told Mr. Thomas, that you saw there was going to be a collision?

"A—Yes.

"Q—And you hollered at Jimmy?

"A—Yes.

"Q—Where was Mr. Irvin's car when you hollered at Jimmy?

"A—Well, it wasn't even with the driveway—I don't remember.

"Q—Was it almost even with the driveway?

"A—It could have been."

Thus it is observed that her testimony supports the physical facts that are shown by the photograph and as testified to by Mr. Lowe. She saw the collision at this intersection. Certainly her testimony bears out the fact that the automobile was in such proximate position as it approached the driveway, that the defendant could have seen the boy coming down that driveway, but did not as he stated to Mr. Lowe, "I didn't see him until we had done hit," appears to put the boy and the man, even if we considered them both capable of being guilty of proximate negligence in the same relative relationship as is found in the cases hereinabove referred to, which would make a jury question to establish the proximate cause of the collision.

Carney and Mai v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322, is a case wherein a pedestrian crossing a street was struck by an automobile. The plaintiff was a school child. The contention of the defendant was that this young man who was 13 years of age, was going across the street and ran into the side of the automobile at which time he was killed, or rendered unconscious and from which unconsciousness he never recovered. The Court said:

"It is the contention of plaintiffs in error that Heard walked into the Carney car as it passed.

"It is not unlikely that Heard, in his confusion, or without knowledge that the car was coming in front of him, did this.

"We do not consider a determination of this question particularly important."

Young Heard though being 13 years of age, the Court commenting in that case, said:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty to care and caution towards them, must calculate upon this, and take precaution accordingly."

That language has been used in our opinions time and time again wherein a child has been hurt by the operation of an automobile. In that case Cook had qualified as administrator of the deceased's estate and brought the suit.

In Gatlinburg Const. Co. v. McKinney, 37 Tenn. App. 343, 350, 263 S. W. (2d) 765, 768, the Court said:

"As to contributory negligence of the injured boy himself, the presumption is that, being less than 14 years of age, he was incapable of protecting himself."

Again quoting from the same author from which the learned Trial Judge quoted, Am. Jur. 5A Section 265, it is said:

"The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving, even though he is rightfully on the highway and has the right of way; he is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance. He must look not only straight ahead, but laterally, to discover whether there is danger of collision with the side of his car."

Of course it simply means as one looks ahead he must see all that comes within the radius of his vision that in

the exercise of ordinary care a person would be expected to see.

Applying the law to the facts as revealed by this record, which we must always consider, including only the proof and inferences to be drawn therefrom favorable to plaintiff, we are of the opinion that the learned Trial Judge erred in directing a verdict, and that it was a jury question to be determined with respect to the proximate cause of the collision. Therefore, the assignment of error is sustained, the verdict of the jury and the judgment of the Trial Court reversed, the cause remanded for new trial in accord with this opinion and the defendant below taxed with the cost of this appeal. The cost in the lower court will be adjudged in the final judgment of that Court.

Judgment will be entered accordingly.

Carney and Bejach, JJ., concur.