**Mrs. Eddie DRINNON**

**v.**

**Donald SMITH.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 14, 1973.

Certiorari Denied by Supreme Court Dec. 3, 1973.

Arthur D. Byrne, with Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, Donald B. Oakley, Morristown, for appellant.

William H. Inman, with Taylor, Inman & Tilson, Morristown, for appellee.

## OPINION

SANDERS, Judge.

The Defendant has appealed from a jury verdict awarding damages for the wrongful death of Plaintiff's husband.

The Defendant, Donald Smith, was operating his automobile in an easterly direction on U.S. Highway 11–E in the City of Morristown and as he approached the intersection of Morelock Road he struck Mr. Taylor Drinnon, a pedestrian, causing his death.

The Plaintiff, Mrs. Eddie U. Drinnon, wife of the deceased, filed suit in the Circuit Court of Hamblen County for the wrongful death of her husband.

The case was tried before a jury with The Honorable Thomas G. Hull, Circuit Judge, presiding.

The jury returned a verdict in favor of the Plaintiff and fixed the damages at $35,000.00.

The Defendant's motion for a new trial was overruled and he has appealed to this court and assigned error.

■ The Defendant's first assignment of error is that the Court erred in refusing to direct a verdict because there was no evidence to support the verdict.

There is virtually no dispute in the material evidence introduced in the trial. Between 6:20 and 6:30 in the morning on September 21, the deceased had started across U.S. Highway 11–E at its intersection with Morelock Road. He was crossing from the north to the south side of the highway. U.S. 11–E, at this point, had two westbound lanes for traffic, a grass median strip, and two lanes for eastbound traffic, as well as a turning lane, making three traffic lanes on the south side of the highway. The light at this hour was described as "dusky." The street lights were on and the automobiles all had their lights on.

One witness testified that he was in a service station on the south side of the highway and saw the deceased some distance before he reached the highway; that the deceased had crossed the two lanes on the north side of the highway and was standing at the edge of the median strip waiting for a break in the traffic, when the witness' attention was drawn to an automobile entering the service station; that about five seconds later he heard a noise, then the screeching of tires, and turned and saw the body of the deceased in the air as a result of having been struck by the Defendant's automobile.

The Defendant testified he had left home about five minutes before the accident; that he was driving in an easterly direction in the right-hand, or curb-side lane of U.S. 11–E; that he was traveling slower than the rest of the traffic, as cars were passing him on the left. He was following an automobile and slowed down for this car to make a right-hand turn into the service station. After the automobile had turned into the service station, he started to accelerate his car and was traveling at about 40 miles per hour (speed limit was 50 miles per hour) when he saw the deceased approximately 100 to 120 feet in front of him crossing from the inside traffic lane into the outside traffic lane in which the Defendant was traveling; that he immediately took his foot off of the accelerator and hit his brakes. He cut to his left to avoid the deceased, but there was an approaching automobile in his left-hand lane that limited the distance he could pull in that direction. When he first saw the deceased the deceased was looking straight ahead, but he apparently saw the Defendant about the same time and started to run and lacked about one stride of being clear of Defendant's automobile when struck by the right headlight and fender of Defendant's car. The deceased's body was knocked and/or carried approximately 90 feet from the point of impact. The impact occurred just at the west edge of Morelock Road and Defendant's automobile stopped about the center of Morelock Road.

The only other pertinent evidence offered by the Plaintiff concerning the accident was the testimony of a son-in-law and daughter of the Deceased who testified about a conversation they had with the Defendant the afternoon after the accident occurred. As material here, the son-in-law testified as follows:

"Q. All right, now I just want you to tell the jury, please, Mr. Templin, what Mr. Smith told you happened?

"A. He said he was heading east to work, and that he saw Mr. Drinnon as he approached the highway, and that he thought that he had gotten across, but that his car had set out overnight, and was covered with dew, and the windshield wipers, where it had knocked the dew off was the only place really that he could see, that one side, or maybe both sides were maybe blurred out because of the dew, where it had set out overnight, but he thought that he had gotten across whenever he approached the intersection."

As material here, the daughter testified as follows:

"Q. All right, would you please tell the Court and jury what Mr. Smith said happened?

"A. All right, he said that he was proceeding up 11E, that is the by-pass up

here, and he saw my father crossing the highway, that his car was covered with dew because it set out over night, and all the vision he had was where the windshield wipers had wiped it off, and that he thought that he had time to get across—

"Q. Thought who had had time to get across?

"A. My father.

"Q. All right, and what—

"A. That's all I remember—and he said that he couldn't avoid hitting him—he said, 'one more foot and I would have missed him, another foot and I would have missed him.'

"Q. And he said he saw him—when did he say he saw him now, the first time?

"A. Well, he said that he was proceeding up the highway—

"Q. No, when did he see Mr. Drinnon?

"A. When he started across the highway. He said he saw him start across the highway."

Although there is little material discrepancy in the testimony of any of the witnesses, we feel that the facts, circumstances, and testimony are such that they raise questions about which minds of reasonable men could differ as to why the accident occurred.

In the case of Lowe v. Irvin (1963), 52 Tenn.App. 356, 373 S.W.2d 623, the court, in addressing itself to the question of directed verdicts, said:

"In giving consideration to the assignment of error in this case it was the duty of the Trial Court, and it is the duty of this Court, to examine the whole record and the rule of law governing the inferences to be drawn therefrom as stated in many of our cases. In Spence v. Carne, 40 Tenn.App. 580, 590, 292 S.W.2d 438, 442, the rule is restated, as had been announced in some of the cases supporting same, as follows:

"'Upon the motion for directed verdict, and in the examination of the record to determine if there is any evidence to support a verdict it is our duty to consider only the facts proven in support of the party against whom such contention is made, and all reasonable inferences to be drawn therefrom, disregarding all countervailing evidence, and if there is any competent evidence about which the minds of reasonable men could disagree, it is proper to overrule such assignments of error. It is only necessary to refer to the cases of D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W. 2d 897; Colonial Baking Co. v. Acquino, 20 Tenn.App. 695, 103 S.W.2d 613 and Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6, 14; McMahan v. Tucker, 31 Tenn.App. 429, 216 S.W.2d 356, 360; Tennessee Central Ry. Co. v. McCowan, 28 Tenn.App. 225, 188 S.W.2d 931.'"

Defendant's first assignment of error is overruled.

■ The Defendant's second assignment of error is: "The Trial Court erred in submitting to the jury the issue of 'last clear chance' and in erroneously charging thereon as follows:

"'I further charge you that it is the law that a party will not be excused from liability for an injury or wrongful death he inflicts on another on the ground of the earlier negligence of the latter, when aware of the latter's exposure to peril, he omits ordinary and reasonable care to avoid the injury. When the observance of this care would have prevented the injury, failure in that regard is actionable wrong. It is so not only because such negligence is the proximate cause of the death, but for the stronger reason that it indicates wantonness, and for this the law affords no excuse. In order for this doctrine, called the last clear chance, to apply, the evidence must show that the peril of the plaintiff's deceased husband was discovered by the defendant, *or should have been* discovered by the

defendant, and after its discovery, the defendant failed to exercise reasonable care to prevent the occurrence and death.'" (emphasis added) . . .

and in refusing to give defendant the following requested corrective instruction:

" 'I charge you that you will disregard the Court's previous instruction on the doctrine of "last clear chance", that doctrine not having been pleaded, and not being applicable under the law of this State nor the facts of this case.' "

We concur with the contention of the Defendant that this was error.

Although the Court refers to this portion of his charge as the doctrine of last clear chance, it is a combination of that and discovered peril, without being a correct statement of the law as to either.

In the case of Smith v. Craig (Tenn. App.1972), 484 S.W.2d 549, the court makes a very clear distinction between last clear chance and discovered peril. The court said:

"The distinction between the two doctrines is the availability of proximate, continuing contributory negligence as a complete defense to an action based upon last clear chance; whereas, that defense is not available under the doctrine of discovered peril. On the one hand, where the defendant *negligently* fails to see the plaintiff in a position of peril, or *negligently* fails to act so as to avoid injury to the plaintiff after having observed him in that position, the plaintiff's contributory negligence or his remote contributory negligence in so positioning himself must, as in any other lawsuit based upon negligence, be considered and given full force and effect. On the other hand, where it is shown the defendant did see the plaintiff in a position of peril; had ample time, opportunity, and ability to avoid injury; but he continued on in the course of his conduct without taking proper and reasonable precautionary measures available to him, and at all times observing the plaintiff's continuing negligence, did proceed to inflect the injury, the defense of contributory negligence is not available to the defendant. The first situation being that of last clear chance; the latter being that of discovered peril. The determining aspect being that in the latter situation the defendant did observe the plaintiff's continuing negligence which placed the plaintiff in a position of peril, but did *consciously* fail to exercise those precautionary measures available to him to avoid injury to the plaintiff. The defendant's action in this latter situation is not negligence; it is a willful, deliberate, consciously executed act. The distinction is that of negligence, either simple or gross, on the one hand, and a consciously deliberate act on the other. The discovered peril doctrine therefore comes into play under different rules as to the defense of contributory negligence because those acts which justify the application of the doctrine exhibit on the part of the defendant a degree of deliberateness which the law cannot condone by saying the plaintiff was in error by being there in the first place. [Citing cases]

\*   \*   \*   \*   \*   \*

"The distinction between the two doctrines requires that each be specifically averred, and requires that each be specifically charged to the jury. The reason being that proximate, continuing contributory negligence and its lesser cousin, remote contributory negligence, come into the picture under an allegation and charge of the doctrine of last clear chance. Whereas under a specific allegation of discovered peril, supported by material evidence, the jury should be charged that upon a finding of that conduct by the defendant, the contributory negligence of the plaintiff is not to be considered in any degree."

We think that, under the charge of the Court, the jury could have concluded the Defendant's failure to see the deceased in time to avoid the accident made him liable regardless of contributory negligence on the part of the deceased.

This portion of the Court's charge was error for the further reason that neither the doctrine of last clear chance nor discovered peril were averred in the pleadings nor was the Court's charge supported by the proof. Zamora v. Shappley, 27 Tenn. App. 768, 173 S.W.2d 721; Harbor v. Wallace, 31 Tenn.App. 1, 211 S.W.2d 172; Smith v. Craig (Tenn.App.1972), 484 S.W. 2d 549.

In the case of Wilson v. Tranbarger, 218 Tenn. 208, 402 S.W.2d 449, the court said:

"It has been held time and again that:

" 'The instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous. Goodall v. Thurman, 38 Tenn. 209. East Tenn. V. & G. R. Co. v. Toppins, 78 Tenn. 58. Three States Lumber Co. v. Blanks, 118 Tenn. 627, 102 S.W. 79. Allen v. Melton, 20 Tenn.App. 387, 99 S.W.2d 219.' Mayor and Aldermen of Town of Morristown v. Inman, 47 Tenn.App. 685, 342 S.W.2d 71."

The Defendant's second assignment of error is sustained.

The judgment of the Trial Court is reversed and the case is remanded for a new trial.

The cost of this appeal is taxed to the Appellee.

COOPER, P. J., and PARROTT, J., concur.